[Cite as *In re T.M.*, 2016-Ohio-162.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


IN THE MATTER OF: : 

    T.M., Delinquent Child :     CASE NO. CA2015-07-017

     :     <u>O P I N I O N</u>
    1/19/2016

     : 

     : 


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. DL 20140692 and DL 20140694


John H. Roszmann, 1235 Dayton Avenue NW, Washington C.H., Ohio 43160, for appellant, T.M.

Jess C. Weade, Fayette County Prosecuting Attorney, Ryan Houston, 110 East Court Street, Washington C.H., Ohio 43160, for appellee, state of Ohio


**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, T.M., appeals from his designation as a Tier III juvenile sexual offender registrant.[1] For the reasons set forth below, we affirm.

{¶ 2} On September 29, 2014, two complaints were filed in the Fayette County Court of Common Pleas, Juvenile Division, alleging that T.M. was a delinquent child for committing

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.

acts that, if committed by an adult, would constitute gross sexual imposition in violation of R.C. 2907.05(A)(4). The complaint filed in Case No. DL20140692 alleged that on February 11, 2013, when T.M. was 15 years old, he had sexual contact with A.R., a four-year-old boy. The complaint filed in Case No. DL20140694 alleged that on July 8, 2014, when T.M. was 16 years old, he had sexual contact with M.S., a five-year-old boy. The sexual contact with both victims was alleged to have occurred while T.M.'s grandmother, who is also T.M.'s legal custodian, was babysitting the two boys.

{¶ 3} On October 30, 2014, T.M. appeared before the juvenile court. The court explained to T.M. the charges he faced and T.M.'s plea options. To protect T.M.'s rights and to allow for the appointment of counsel, the juvenile court entered a denial to the charges on T.M.'s behalf. On November 26, 2014, T.M., T.M.'s counsel, and the state appeared at a pretrial hearing, at which time the state informed the juvenile court that T.M. wished to change his plea and enter admissions to the charges. The juvenile court accepted T.M.'s admissions, found T.M. to be a delinquent child, and scheduled a dispositional hearing for January 13, 2015. An entry adjudicating T.M. delinquent was filed by the juvenile court on December 9, 2014.

{¶ 4} At the January 13, 2015 dispositional hearing, the juvenile court indicated that it had reviewed the victim impact statements, considered a letter written by one of the victim's parents, and considered the state's recommendation that T.M. undergo sexual offender therapy at a local rehabilitation facility. The court committed T.M. to the permanent custody of the Ohio Department of Youth Services (DYS) for a minimum period of at least six months and potentially until he turned 21 years old. The court then suspended T.M.'s commitment and placed him in the custody of the Miami Valley Juvenile Rehabilitation Center (MVJRC).[2]

---

2. T.M. was placed in the temporary custody of the South Central Ohio Regional Juvenile Detention Center while awaiting admission into MVJRC. Although the court sentenced T.M. to "90 days in each case, consecutive, for a

The court advised T.M. that following his completion of MVJRC's program, the court would consider "what [sex offender] classification you would be based on reports we get from your participation at the * * * Program and how successful they deem treatment to be." A judgment entry journalizing the court's disposition of T.M. was filed January 13, 2015.

{¶ 5} On July 9, 2015, the juvenile court held a hearing for "further disposition and classification" of T.M. as a juvenile sex offender registrant. At this time, the state requested T. M. be classified a Tier III juvenile sex offender and a letter from one of the victim's parents was read into the record. The juvenile court then heard testimony from Albert Cowan, a senior mental health therapist at MVJRC, and reviewed T.M.'s progress report from MVJRC. According to Cowan and the report, T.M. had done "very well" in his treatment program. T.M. had demonstrated a high level of self-control and he had taken responsibility for his actions. Cowan opined that T.M. presented a "very low risk to reoffend" and does not pose a danger to society. While in the MVJRC's program, T.M. received 385 notations for pro-social behavior and only one notation for a minor rules infraction, which T.M. received for talking out of turn with another juvenile.

{¶ 6} After considering the foregoing evidence, the juvenile court classified T.M. a Tier III sex offender, subject to community notifications. In classifying T.M. a Tier III offender, the court focused on the fact that T.M. had assaulted multiple young victims who had been left in his care. The court commented that T.M. was "essentially [an] authority [figure] over the children" and he used this position to facilitate the offenses. After advising T.M. that his Tier III classification was subject to review in the future, the court informed T.M. of various community control conditions it was placing upon him. On July 13, 2015, the court journalized its entry classifying T.M. a Tier III sex offender.

_____

total 180 days" in the detention center, T.M. only spent seven days in the detention center's custody before being transferred to MVJRC.

{¶ 7}   T.M. appealed from this entry, raising two assignments of error.

{¶ 8}   Assignment of Error No. 1:

{¶ 9}   THE TRIAL COURT ERRED TO THE PREJUDICE OF T.M. WHEN IT FAILED TO COMPLY WITH THE REQUIREMENTS OF JUVENILE RULE 29(D) IN ACCEPTING HIS ADMISSIONS.

{¶ 10}   In his first assignment of error, T.M. argues the juvenile court erred when it accepted his admissions in December 2014, without complying with the requirements of Juv.R. 29(D).  Specifically, T.M. argues the juvenile court failed to "address [him] personally to determine whether his admissions were made voluntarily and with an understanding of the nature of the allegations against him, the consequences thereof, and that he was waiving his constitutional rights to face his accusers, to challenge the evidence against him, to remain silent, and to introduce evidence in his own behalf."

{¶ 11}   In response to T.M.'s assigned error, the state contends that T.M.'s Juv.R. 29(D) argument is not properly before this court as T.M. did not timely appeal from the juvenile court's January 13, 2015 dispositional order.  The state argues that the January 13, 2015 order was a final order and that pursuant to App.R. 4(A)(1), any arguments T.M. wished to raise relating to his admission should have been raised from an appeal of the January 13, 2015 order.  T.M. contends, however, that this order was interlocutory in nature as the January 13, 2015 disposition was only a "partial disposition" which contemplated further action by the court.  In support of his argument, T.M. relies on the language in the court's January 13, 2015 order which states that "[t]his matter will come on for further disposition and offender classification upon completion of the MVJRC program."  T.M. argues that until "the juvenile court completed its disposition by classifying him as a Tier III [s]ex [o]ffender," there was not a final order from which he could appeal to challenge the juvenile court's failure to comply with Juv.R. 29.  In support of his argument that his appeal is timely, T.M. relies on

- 4 -

App.R. 4(B)(5).

{¶ 12} App.R. 4(A) provides the following regarding the time-period in which an appeal should be filed:

> (1) *Appeal from order that is final upon entry.* Subject to the provisions of App.R. 4(A)(3), a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry.
>
> (2) *Appeal from order that is not final upon its entry.* Subject to the provisions of App.R. 4(A)(3), a party who wishes to appeal from an order that is not final upon its entry but subsequently becomes final—such as an order that merges into a final order entered by the clerk or that becomes final upon dismissal of the action—shall file the notice of appeal required by App.R. 3 within 30 days of the date on which the order becomes final.

(Emphasis sic.) App.R. 4(B)(5) sets forth an exception to the 30-day appeal requirement. It provides that "[i]f an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ.R. 54(B), a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims." App.R. 4(B)(5).

{¶ 13} The issue, therefore, is whether the January 13, 2015 order was a final appealable order from which T.M. could have raised his Juv.R. 29 arguments. Pursuant to Section 3(B)(2), Article IV of the Ohio Constitution, appellate courts have jurisdiction only over the judgments or final orders of inferior courts. R.C. 2501.02 specifically provides appellate courts with jurisdiction "upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or *final orders* of courts of record inferior to the court of appeals within the district, *including the finding, order, or judgment of a juvenile court that a child is delinquent*, neglected, abused, or dependent, for prejudicial error committed by such lower court." (Emphasis added.)

- 5 -

{¶ 14} "An order is a final order that may be reviewed, affirmed, modified, or reversed * * * when it * * * affects a substantial right in an action that in effect determines the action and prevents a judgment." R.C. 2505.02(B)(1). A "substantial right" is a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). An order that affects a substantial right "has been perceived to be one which, if not immediately appealable would foreclose appropriate relief in the future." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, ¶ 44.

{¶ 15} In *In re Sekulich*, 65 Ohio St.2d 13, 14 (1981), the Ohio Supreme Court held that "a finding of delinquency by a juvenile court, unaccompanied by any disposition thereof, is not a final appealable order." Therefore, before a delinquency finding is final and appealable, the juvenile court must enter a dispositional order. R.C. 2152.19 sets forth various types of dispositional orders a juvenile court is authorized to make, including committing the child to the temporary custody of any school, facility, or institution, placing a child on community control, committing the child to the custody of the court, or "[m]ak[ing] any further disposition that the court finds proper." R.C. 2152.19(A)(1)-(8).

{¶ 16} In the present case, the juvenile court accepted T.M.'s admissions, found him delinquent, and entered a dispositional order. In its January 13, 2015 entry, the court imposed a suspended DYS commitment, ordered T.M. to complete sexual offender therapy at MVJRC, and imposed costs. The court therefore imposed a disposition, or sentence, on T.M., and such disposition was final, regardless of the fact that the juvenile court retained jurisdiction over T.M. to later classify him as a juvenile sex offender registrant or modify its dispositional orders. *See* R.C. 2152.02(C)(6); R.C. 2152.22; R.C. 2152.83.[3]

---

3. R.C. 2152.02(C)(6) provides in relevant part that "[t]he juvenile court has jurisdiction over a person who is adjudicated a delinquent child or juvenile traffic offender prior to attaining eighteen years of age until the person

{¶ 17} The juvenile court's statement in its January 13, 2015 entry that T.M. would be brought back before the court for "further disposition and [sex] offender classification" indicated the court's intent to wait to classify T.M. as a juvenile sex offender registrant until after T.M. had completed his rehabilitation program and was being released from a secure facility. R.C. 2152.83(A) requires mandatory classification for 16 and 17-year-old juveniles who commit sexually oriented offenses. This statute provides in relevant part that

> the court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility an order that classifies the child a juvenile offender registrant * * *.

Similarly, R.C. 2152.83(B) permits classification of a 14 or 15-year-old juvenile who has committed a sexually oriented offense as a juvenile sex offender registrant either "at the time of disposition of the child or, if the court commits the child * * * to the custody of a secure facility, * * * at the time of the child's release from the secure facility." The language utilized in R.C. 2152.83 therefore indicates that where classification of a juvenile is not done until after the juvenile's release from a secure facility, the classification is not part of the disposition itself. Rather, the classification is the subject of a post-dispositional proceeding, and the order constitutes a separate, final appealable order.

{¶ 18} Accordingly, we find that where a juvenile court has filed an entry adjudicating a juvenile delinquent and imposing a disposition on the juvenile, the court has issued a final appealable order. The fact that the juvenile court indicates in its entry that further

---

attains twenty-one years of age * * *." In entering a dispositional order against a child who has been adjudicated delinquent, R.C. 2152.22(A) provides that with certain exceptions, "all * * * dispositional orders made by the court under this chapter shall be temporary and shall continue for a period that is designated by the court in its order, *until terminated or modified by the court* or until the child attains twenty-one years of age." (Emphasis added.) One of the exceptions to the requirement that a dispositional order terminate when the child reaches twenty-one years of age is set forth in R.C. 2152.83. This statute specifically exempts sex offender classification proceedings from the general rule that dispositions end when the juvenile turns twenty-one. R.C. 2152.83(E). *See also In re N.Z.*, 11th Dist. Lake No. 2012-L-100, 2014-Ohio-157, ¶ 38; *In re D.R.*, 5th Dist. Knox No. 13CA27, 2014-Ohio-588, ¶ 9.

proceedings to classify the juvenile as a sex offender in accordance with R.C. 2152.83 are necessary does not make the entry interlocutory. To hold otherwise would result in an absurd outcome as it would prohibit a juvenile from challenging his delinquency adjudication or disposition until after he has served his sentence at a secure facility.

{¶ 19} For the reasons set forth above, we conclude that the juvenile court's January 13, 2015 entry was a final appealable order as it affected T.M.'s substantial rights. T.M. failed to timely appeal from this order, and as a result, his Juv.R. 29(D) argument is not properly before this court. We therefore overrule T.M.'s first assignment of error.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE JUVENILE COURT ABUSED ITS DISCRETION IN CLASSIFYING T.M. AS A TIER III SEXUAL OFFENDER REQUIRING LIFETIME SEX OFFENDER REGISTRATION.

{¶ 22} In his second assignment of error, T.M. challenges the juvenile court's decision to classify him as a Tier III sexual offender subject to community notifications, arguing that the court failed to properly consider the factors set forth in R.C. 2152.83(D). T.M. also argues that his classification as a Tier III offender is improper as the "most severe classification that an adult can receive for the same offense [of gross sexual imposition] is * * * a Tier II [classification], which does not entail community notification."

{¶ 23} R.C. 2152.83(A) sets forth the juvenile-offender-registrant-classification procedure for 16 and 17-year-old juveniles who are found delinquent for committing a sexually oriented offense or a child-victim-oriented offense and who are not subject to R.C. 2152.82 (repeat offender) or 2152.86 (serious youthful offender). Under R.C. 2152.83(A)(1), juvenile-offender-registrant classification is mandatory and must occur either at the time the court issues its dispositional order or, "if the court commits the child for the delinquent act to the custody of a secure facility, [must occur] at the time of the child's release from the secure

facility." The juvenile court is required to hold a hearing under R.C. 2152.831 to determine whether the juvenile should be classified as a Tier I, Tier II, or Tier III juvenile sex offender. *See* R.C. 2152.83(A)(2).

{¶ 24} The juvenile-offender-registrant-classification procedure for 14 and 15-year-old juveniles who have been found delinquent for committing sexually oriented offenses is set forth in R.C. 2152.83(B). Classification under R.C. 2152.83(B) is not mandatory; a judge may classify a juvenile as a juvenile-offender registrant only after first conducting a hearing pursuant to R.C. 2152.83(B)(2) to determine whether the juvenile should be so classified. *See In re I.A.*, 140 Ohio St.3d 203, 2014-Ohio-3155, ¶ 6. In determining whether a juvenile should be classified as a juvenile sex offender under R.C. 2152.83(B), the juvenile court must consider all relevant factors, including, but not limited to: (1) the nature of the sexually-oriented offense or child-victim oriented offense; (2) whether the offender has shown any genuine remorse or compunction for the offense; (3) the public interest and safety; (4) the factors set forth R.C. 2950.11(K),[4] (5) the factors set forth in R.C. 2929.12(B) and (C),[5] and

---

4. The factors that a court may consider in making its juvenile sex offender registrant classification determination include: (1) the offender's age; (2) the offender's prior criminal or delinquency record regarding all offenses; (3) the victim's age; (4) whether the offense involved multiple victims; (5) whether drugs or alcohol were used to impair the victim or prevent the victim from resisting; (6) whether the offender has completed prior sentence conditions or programs; (7) whether the offender has a mental illness or mental disability; (8) the nature of the sexual interaction and whether the conduct was part of a demonstrated pattern of abuse; (9) whether the offender displayed or threatened cruelty during the offense; and (10) any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.11(K)(1)-(10).

5. { a} The factors that a court may consider pursuant to R.C. 2929.12(B), the existence of which makes an offense more serious, include whether: (1) the victim suffered any physical or mental injury which was exacerbated due to the victim's physical or mental condition or age; (2) the victim suffered serious physical, psychological, or economic harm; (3) the offender held a public office or position of trust in the community and the offense related to that office or position; (4) the offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice; (5) the offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense; (6) the offender's relationship with the victim facilitated the offense; (7) the offender committed the offense for hire or as part of an organized criminal activity; (8) whether the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion when committing the offense; and (9) the offense dealt with a family or household member. R.C. 2929.12(B)(1)-(9).

{ b} The factors that a court may consider pursuant to R.C. 2929.12(C), the existence of which makes an offense less serious, include whether: (1) the victim induced or facilitated the offense; (2) the offender acted under strong provocation; (3) the offender did not cause or expect to cause physical harm to any person or

(6) the results of any treatment provided to the offender and of any follow-up professional assessment of the offender. R.C. 2152.83(D)(1)-(6). After considering the foregoing factors, if the court decides to issue an order classifying the child as a juvenile sex offender registrant, the court must conduct a hearing under R.C. 2152.831 to determine whether the juvenile should be classified as a Tier I, Tier II, or Tier III juvenile sex offender. R.C. 2152.83(C)(1). This hearing, however, may be held at the same time as the hearing under R.C. 2152.83(B)(2). *See* R.C. 2152.83(C)(1).

{¶ 25} A juvenile court is awarded broad discretion in classifying an offender as a Tier I, Tier II, or Tier III juvenile sex offender registrant. *See In re K.D.H.*, 12th Dist. Butler No. CA2012-09-188, 2013-Ohio-2636, ¶ 8, citing *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, ¶ 20 (which tier an offender is placed on rests within the juvenile court's discretion); *In re B.D.*, 11th Dist. Portage No. 2011-P-0078, 2012-Ohio-4463, ¶ 20. "Unlike the classifications for adults, the tiers for juvenile sex offenders are not mandated by the offense of which the offender had been convicted." *In re C.A.*, 2d Dist. Montgomery No. 23022, 2009-Ohio-3303, ¶ 60. Instead, R.C. 2950.01 defines a juvenile sex offender for each tier as "[a] sex offender who is adjudicated a delinquent child for committing any sexually oriented offense *and* who a juvenile court, pursuant to * * * [R.C. 2152.83] * * * classifies a tier [I, II, or III] sex offender/child-victim offender." (Emphasis added.) R.C. 2950.01(E)(3), (F)(3), (G)(3). Further, R.C. 2152.831(A) explicitly requires the juvenile court to conduct a hearing prior to classifying a delinquent child pursuant to R.C. 2152.83 to determine whether to classify the child a Tier I, II, or III sex offender or child-victim offender. "This provision would be superfluous if the juvenile court's classification determination were merely a ministerial act based solely on the offense that the delinquent child had committed. Thus, the determination

property; and (4) there are substantial grounds to mitigate the offender's conduct, although such grounds are not enough to constitute a defense. R.C. 2929.12(C)(1)-(4).

of the tier classifications for juveniles implicitly includes a discretionary determination by the juvenile court as to the tier classification for the juvenile sex offender." *In re C.A.* at ¶ 61.

{¶ 26} In the present case, the juvenile court held a classification hearing in accordance with R.C. 2152.831 on July 9, 2015, in which it received evidence relevant to the factors set forth in R.C. 2152.83(D). The court had before it MVJRC's report detailing T.M.'s successful participation in the program and Cowan's testimony that T.M. presented a "very low risk to reoffend" and did not pose a danger to society. However, after considering the nature of the two sexual offenses, T.M.'s age when committing the offenses, the fact that there were multiple young victims (only four and five years old, respectively), and T.M.'s use of his role as an authority figure over the children to facilitate the offenses, the court concluded that a Tier III classification with community notifications was appropriate.

{¶ 27} We find no abuse of discretion in the juvenile court's decision to classify T.M. as a Tier III juvenile sex offender registrant with community notifications as the record demonstrates the court considered all relevant factors before classifying T.M. Although reports of T.M.'s success within the MVJRC program and Cowan's testimony that T.M. presented a low risk to reoffend were factors weighing in favor of a lesser tier classification, numerous other factors considered by the juvenile court weighed in favor of a higher tier classification. The juvenile court was in the best position to assess and weigh the evidence before it. *See In re K.D.H.*, 2013-Ohio-2636 at ¶ 13-14. Given the serious nature of the offenses, the disparity in age between T.M. and his multiple, minor victims, and T.M.'s use of his position of authority over the victims to facilitate the offenses, we find that the juvenile court did not act unreasonably, arbitrarily, or unconscionably in classifying T.M. as a Tier III juvenile sex offender registrant, subject to reporting notifications.

{¶ 28} We further find no merit to T.M.'s argument that it was improper for the court to classify him as a Tier III offender when the maximum classification a similarly situated adult

offender could have received was a Tier II classification. As we stated above, tier classifications for juvenile sex offenders, unlike classifications for adult sex offenders, are not mandated by the offense for which the offender has been convicted. *See In re C.A.*, 2009-Ohio-3303 at ¶ 60. Rather, the juvenile sex offender classification statutes grant juvenile courts the discretion to determine the appropriate tier in which to classify a juvenile offender registrant in order to further the goals of the juvenile justice system. *Id.* at ¶ 62. Had the General Assembly intended to require the juvenile court to classify a juvenile offender based exclusively on the offense for which the child was adjudicated, in the same manner adults are classified, "it could have simply stated * * * that a Tier III offender includes a delinquent child who is adjudicated for committing any sexually oriented offense identified in R.C. 2950.01(G)(1) and who a juvenile court classifies as a JOR [juvenile offender registrant]." *Id.* at ¶ 68. "Tiers I and II could have been defined with similar language, clarifying that, when a juvenile court classifies a JOR, the court must impose the tier that the juvenile would have received if the child were an adult." *Id.* The General Assembly, however, did not require that juvenile offenders and adult offenders be treated the same. The juvenile court, therefore, did not err when it exercised its discretion and classified T.M. a Tier III offender.

{¶ 29} T.M.'s second assignment of error is overruled.

{¶ 30} Judgment affirmed.

M. POWELL, P.J., and RINGLAND, J., concur.