[Cite as *In re K.B.*, 2018-Ohio-4810.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: K.B.

:      APPEAL NO. C-170542
         TRIAL NO. 13-7621Z

:

:      *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 5, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller,* Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Defendant-Appellant K.B.

**MILLER, Judge.**

{¶1} On October 18, 2013, 14-year-old K.B. admitted to and was adjudicated delinquent for conduct that, had it been committed by an adult, would have constituted the offense of rape in violation of R.C. 2907.02. At the dispositional hearing, K.B. was placed on probation, given a suspended commitment to the Department of Youth Services ("DYS") until age 21, ordered to complete sex-offender treatment, ordered to stay away from the victim, and classified as a Tier I sex offender under Ohio's version of the Adam Walsh Act ("AWA").

{¶2} In 2015, after K.B. had completed his sex-offender treatment program, the juvenile court released K.B. from "official probation" and placed him on nonreporting probation with "monitored time." On April 3, 2017, following a completion-of-disposition hearing, the magistrate continued K.B.'s Tier I sex-offender classification. K.B. filed objections to the magistrate's decision, which the juvenile court overruled after a hearing. The juvenile court entered its own decision, finding that the continuation of K.B.'s Tier I classification was appropriate. K.B. has appealed, raising two assignments of error. K.B. has withdrawn the first assignment of error.

{¶3} K.B.'s second assignment of error alleges that the juvenile court abused its discretion in continuing K.B.'s Tier I sex-offender classification.

{¶4} The juvenile court has discretion to determine in which tier to classify a juvenile sex offender. *In re Antwon C.*, 182 Ohio App.3d 237, 2009-Ohio-2567, 912 N.E.2d 182 (1st Dist.). "The trial court has discretion to consider all relevant information and to appropriately categorize the juvenile." *Id.* at ¶ 17. The classification of a juvenile offender is personal to the offender, the offense "is only one of many pieces of relevant information the juvenile court may consider, and the level of the offense is not determinative of the level of classification." *In re N.Z.*, 11th

Dist. Lake No. 2012-L-100, 2014-Ohio-157, ¶ 17. The juvenile sex-offender classification statutes that give the juvenile court discretion to determine in what tier the juvenile should be classified further the "goal of reintegrating juveniles back into society" by emphasizing "individual assessment, the best interest of the child, treatment, and rehabilitation." *In re C.A.*, 2d Dist. Montgomery No. 23022, 2009-Ohio-3303, ¶ 62, quoting *State v. Hanning*, 89 Ohio St.3d 86, 88, 728 N.E.2d 1059 (2000).

{¶5} In *In re Antwon C.* at ¶ 20, we stated,

[U]nder R.C. 2152.84, when a child completes all aspects of the disposition, including probation and any ordered treatment, the trial court "shall conduct a hearing" to consider the risk of reoffending so that the trial court can determine whether the order to register as a sex offender should be continued or terminated.

{¶6} In deciding whether the juvenile's sex-offender classification should be continued, the juvenile court must review the effectiveness of the disposition and any treatment to determine the risk that the child might reoffend. R.C. 2152.84(A)(1). The court must consider "all relevant factors," including the factors listed in R.C. 2152.83(D). R.C. 2152.84(A)(2). The R.C. 2152.83(D) factors include the nature of the sexually-oriented offense; whether the child has shown any genuine remorse or compunction for the offense; the public interest and safety; the factors set forth in R.C. 2950.11(K); the factors set forth in R.C. 2929.12(B) and (C) as they apply to the delinquent child, the offense, and the victim; and the results of any treatment provided to the child and of any follow-up professional assessment of the child.

{¶7} The R.C. 2950.11(K) factors include the age of the delinquent child, the child's prior record, the age of the victim, the number of victims, whether alcohol or drugs were used in the commission of the offense, any prior dispositional order or

treatment, any mental illness or disability of the child, the nature of the offense, whether the offender displayed cruelty, and any other "behavioral characteristics" that contributed to the delinquent child's conduct. The R.C. 2929.12(B) and (C) factors relevant to K.B. include whether the physical or mental injury suffered by the victim was exacerbated by the age of the victim; the victim suffered serious physical or psychological harm; the offender's relationship with the victim facilitated the offense; the victim induced or facilitated the offense; in committing the offense, the offender expected to cause physical harm; and there are grounds to mitigate the offender's conduct that do not constitute a defense.

{¶8} K.B. submitted a report by his expert witness, psychologist Dr. Stuart Bassman, who opined that K.B. was at a "low risk to reoffend." But Dr. Bassman pointed out that "low risk does not mean 'no' risk." According to Dr. Bassman, the risk for a sex offender to reoffend can be managed, but it cannot be eliminated. K.B. presented evidence that he had successfully completed his court ordered sex-offender treatment and had reduced the risk factors that had been found to exist when he was first placed on the sex-offender registry. K.B. testified in detail about the offense, his treatment, and how he manages his behavior. He presented evidence that his treatment had been effective in educating him about why he had committed his offense and what his "triggers" are, and that he had used this insight to develop the "relapse plan" that he employs. K.B. testified that he writes in a journal as an outlet for his emotions, no longer watches pornography, avoids high-risk situations, has a list of people he can "go to" if he has a problem, and is the dance captain for the school's show choir. He also testified that he no longer "shuts people out" or suppresses his feelings, has a strong relationship with his family, has a school-based social worker, and has not reoffended in the three years since the offense.

{¶9}   K.B. was 14 when he committed the rape.  The victim was K.B.'s eight-year-old cousin.  The victim's mother testified about the effect that the rape had on her son.  She stated that the victim "has issues" that he did not have before the rape, including anxiety, depression, suicide attempts, attempts to self-harm and to inflict harm on his mother, sleep loss, and touching and acting out in sexually inappropriate ways.  In addition, the victim's mother testified to and presented medical evidence of the victim's diagnoses of posttraumatic stress disorder, suicide ideation, a mood disorder, anxiety disorder, depression, adjustment disorder, behavior disorder, and insomnia, all stemming from the rape.

{¶10}  The juvenile court called into question K.B.'s credibility as it related to his self-reporting.  The court also noted that K.B. had not followed recommendations to treat with a psychotherapist to "deepen his sense of responsibility and accountability for his actions."  Further, the juvenile court found that the evidence supported the magistrate's findings that K.B. lacked maturity and experienced "sexual discomfort."  The court noted K.B.'s "inconsistent accounting of events" and his "overall lack of credibility."  The juvenile court expressly found that a risk of recidivism existed that was "a concern for the public interest and safety."

{¶11}  It is clear that the magistrate and the juvenile court carefully considered the statutory factors.  Following a review of the record, we cannot say that the juvenile court's decision to continue K.B.'s Tier I sex-offender classification was arbitrary, unreasonable, or unconscionable.  Therefore, it was not an abuse of discretion.  *See State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).  K.B.'s assignment of error is overruled.  The judgment of the juvenile court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.
Please note:
    The court has recorded its own entry this date.

5