**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.R.*, Slip Opinion No. 2022-Ohio-4493.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4493

IN RE D.R.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.R.*, Slip Opinion No. 2022-Ohio-4493.]**

*Criminal law—Juvenile law—R.C. 2152.84(A)(2)(b)—Due process of law— Fourteenth Amendment to the United States Constitution—Article I, Section 16, Ohio Constitution—Fundamental fairness—R.C. 2152.84(A)(2)(b) is fundamentally unfair when applied to persons who were 16 or 17 years old at the time of committing a sexually oriented offense and were classified at the lowest tier for purposes of juvenile-sex-offender registration, because that statute does not afford the juvenile court discretion at the completion- of-disposition hearing to consider whether the offender's tier classification should be continued beyond age 18 or terminated—Judgment affirmed and cause remanded for new completion-of-disposition hearing.*

(No. 2021-0934—Submitted May 25, 2022—Decided December 16, 2022.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-190594, 2021-Ohio-1797.

_____

**BRUNNER, J.**

{¶ 1} Ohio's juvenile-justice system, codified in R.C. Chapters 2151 and 2152, seeks to care for, protect, and rehabilitate children while at the same time ensure public safety and accountability for wrongdoing by children. *See* R.C. 2151.01 and 2152.01. These goals do not perfectly align, and often, in our attempt to achieve them, children in the juvenile system are caught between the two, receiving "the worst of both worlds," being afforded neither the full protections given to adults in criminal courts nor the individualized care and treatment required to rehabilitate them as juveniles. *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

{¶ 2} The hybrid nature of juvenile courts—combining aspects of both the adult criminal-justice system and the *parens patriae* doctrine of protecting children—requires nuanced and balanced procedures. The General Assembly has specifically instructed this court to "liberally interpret[] and construe[]" R.C. Chapters 2151 and 2152 so as "[t]o provide judicial procedures * * * in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced." R.C. 2151.01(B). The First District Court of Appeals followed this instruction when it found R.C. 2152.84 unconstitutional as applied to appellee, D.R.—the juvenile in this case. 2021-Ohio-1797, 173 N.E.3d 103, ¶ 14.

{¶ 3} A juvenile who commits a sexually oriented offense at the age of 14, 15, 16, or 17 is subject to classification as a juvenile-offender registrant when the juvenile court issues its dispositional order. *See* R.C. 2152.82 through 2152.86. When a juvenile court orders a juvenile offender to be classified as a juvenile-offender registrant, it must conduct an initial hearing to determine the juvenile's classification level—Tier I, II, or III. R.C. 2152.831(A). The juvenile court must also conduct a separate hearing at the end of the juvenile's disposition "to review

the effectiveness of the disposition and of any treatment provided for the child." R.C. 2152.84(A)(1). At the completion-of-disposition hearing, the juvenile court is required to determine the level of risk that the juvenile might reoffend and whether the juvenile's classification should be continued, terminated, or modified as set forth in the statute. *Id.*

**{¶ 4}** But under R.C. 2152.84(A)(2)(b), for a juvenile offender who was 16 or 17 years old at the time of the offense and was classified as a Tier 1 sex offender, the juvenile court must continue that classification at the completion-of-disposition hearing, no matter how effective the treatment was or whether any risk of reoffending is present. And because R.C. 2152.85(B)(1) does not permit a juvenile to request an offender-classification review for three years, that Tier 1 classification follows the juvenile into adulthood.

**{¶ 5}** A juvenile court's ability to individually assess and treat juvenile offenders is a key element to maintaining fairness in our juvenile-justice system. So, too, is shielding juveniles from carrying the consequences and stigma of their juvenile delinquency into adulthood. *See State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, ¶ 1, citing *State v. Hanning*, 89 Ohio St.3d 86, 89, 728 N.E.2d 1059 (2000); *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 19. And the juvenile-justice system values rehabilitation over punishment. *See Hand* at ¶ 36. As applied in this case, R.C. 2152.84(A)(2)(b) imposes a punishment on D.R. that extends into his adulthood through a process that provides neither discretion by the juvenile court nor shielding by the juvenile-justice system; the statutory provision is therefore fundamentally unfair to D.R. and similarly situated juveniles.

## I. FACTS

**{¶ 6}** In 2018, D.R. was adjudicated delinquent for sexually assaulting his 12-year-old friend in 2017 when he was 16 years old, conduct that would have constituted gross sexual imposition against a victim under the age of 13 if

committed by an adult. At the disposition hearing, the juvenile court ordered D.R. to pay restitution and to stay away from the victim, and the court committed D.R. to the Department of Youth Services until he turned 21. However, the juvenile court suspended D.R.'s commitment and placed him on probation with a number of conditions: D.R. was ordered to complete a juvenile-sex-offender treatment program through Lighthouse Youth and Family Services, attend counseling, and not be in the presence of any child aged 13 years or younger without supervision.

{¶ 7} A separate hearing was held pursuant to R.C. 2152.83 to determine D.R.'s classification level as a juvenile-offender registrant. The juvenile court classified D.R. as a Tier I offender, the lowest classification level and the one with the least restrictive reporting requirements. D.R. was further notified that he had a duty to register as a sex offender and that he would be entitled to another hearing upon the completion of his disposition, at which time the court's order and any determinations made therein would be "subject to modification or termination pursuant to ORC 2152.84 and ORC 2152.85."

{¶ 8} In 2019, at the end of D.R.'s disposition, the juvenile-court magistrate conducted a hearing at which D.R.'s attorney requested that the court terminate D.R.'s probation and juvenile-offender registration status. D.R.'s probation officer informed the court that D.R. had "done really well on probation," that he had graduated from high school and planned to attend college, and that he was working. The prosecutor and D.R.'s attorney jointly submitted for review a risk-assessment report prepared by a psychologist as well as D.R.'s discharge summary from his treatment program. D.R.'s attorney argued that the reports demonstrated D.R.'s successful completion of the treatment program and that D.R. was by most indicators assessed as being at low risk for reoffending. D.R.'s attorney also argued that the statutes preventing the court from exercising discretion to terminate D.R.'s classification as a juvenile-sex-offender registrant violated D.R.'s due-process rights under the Fourteenth Amendment to the United States Constitution and

Article I, Sections 2 and 16 of the Ohio Constitution and should therefore be held unconstitutional.

{¶ 9} The magistrate found that she had no ability to terminate D.R.'s classification as a juvenile-sex-offender registrant under the statutory scheme, and she continued D.R.'s Tier I classification. She terminated D.R.'s probation, however, finding that he had "successfully completed all conditions imposed upon him by [the] Court." D.R. objected to the magistrate's decision, arguing that the continuation of his juvenile-sex-offender classification violated his due-process rights. The juvenile court overruled D.R.'s objections and adopted the magistrate's decision. In doing so, the court noted that it "was constrained by current precedent" established by the First District Court of Appeals in *In re M.I.*, 2017-Ohio-1524, 88 N.E.3d 1276 (1st Dist.), which upheld the classification scheme against an equal-protection challenge. D.R. appealed the juvenile court's decision.

{¶ 10} The First District agreed with D.R. It concluded that because R.C. 2152.84 required a hearing yet granted the juvenile court no discretion to eliminate or alter the Tier I classification that had been imposed on D.R. for an offense he committed when he was 16 years old, the statute was fundamentally unfair as applied to D.R. and thus violated his right to procedural due process. 2021-Ohio-1797, 173 N.E.3d 103, at ¶ 14. The appellate court adhered to our precedent, recognizing that rehabilitation is the primary goal of the juvenile-justice system and that rehabilitation requires a juvenile court to conduct careful, individualized assessments of the juvenile offender, not simply impose automatic penalties. *Id*. at ¶ 10, citing *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, and *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209.

{¶ 11} The appellate court reversed the juvenile court's judgment and remanded the cause for a new completion-of-disposition hearing to allow the juvenile court to exercise its discretion to continue D.R.'s Tier I classification or to "declassify" him. *Id.* at ¶ 17.

{¶ 12} Appellant, the state, instituted this discretionary appeal, which we accepted on the following proposition of law: "The process provided by the legislature in R.C. 2152.84 complies with state and federal due process and is fundamentally fair." *See* 164 Ohio St.3d 1460, 2021-Ohio-3594, 174 N.E.3d 810.

## II. ANALYSIS

### A. Due process in the juvenile-justice context

{¶ 13} "Due-process rights are applicable to juveniles through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution." *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 28. Because juvenile courts are not meant to function as adult criminal courts, many protections available to adult defendants are available to juvenile offenders only because of principles of due process. *See D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 41-44. For example, the right to counsel is not guaranteed to juveniles by the Sixth Amendment but "flows to the juvenile through the Due Process Clause of the Fourteenth Amendment." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79.

{¶ 14} We examine juvenile procedural-due-process claims through a framework of fundamental fairness. *See In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 72, citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S.Ct. 1976, 29 L.E.2d 647 (1971) (plurality opinion). Fundamental fairness requires a "balanced approach," *D.H.* at ¶ 49, that assesses the " 'several interests that are at stake,' " *In re C.S.* at ¶ 80, quoting *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). This is not an exact test, but it is what is necessary to "preserve the special nature of the juvenile process." *In re C.P.* at ¶ 73.

{¶ 15} Judicial discretion is essential to preserving that special nature of the juvenile process and to maintaining fundamental fairness in the juvenile-justice

system.  *See D.H.* at ¶ 59 ("The court's dispositional role is at the heart of the remaining differences between juvenile and adult courts").  Juvenile-court judges and magistrates are tasked to issue orders that not only provide for the "care, protection, and mental and physical development of children" but at the same time "protect the public interest and safety, hold the offender accountable," provide restitution to the victim, and rehabilitate the offender.  R.C. 2152.01(A).  To ensure that orders are "reasonably calculated to achieve the overriding purposes" of the statutes that govern the juvenile-justice system, R.C. 2152.01(B), juvenile courts must evaluate the particular facts and circumstances of each case and discern the particular problems and needs of the juvenile appearing before them.

{¶ 16} In accord with the purpose and goals of the juvenile-justice system and with the balancing approach required in this special process, we have determined that when a statute removes the discretion of the juvenile court at a critical time in the proceedings, it offends fundamental fairness.  *See In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 85.  Similarly, the element of judicial discretion has been the saving factor in our decisions to uphold statutes that permit the extension of certain penalties for juveniles into adulthood. *See D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 59 (finding that due process does not require a jury finding to impose a blended juvenile-adult sentence, because in juvenile proceedings, the judge's expertise is critical); *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, at ¶ 32-37 (holding that the continuation of juvenile-offender registration into adulthood for a juvenile who committed a sexually oriented offense at age 14 did not offend due process, because the applicable statutes included procedural protections to safeguard fundamental fairness, which included "a hearing and the exercise of the court's discretion").  Therefore, judicial discretion is a significant procedural protection in the juvenile-justice system and one that is necessary to promote that system's rehabilitative purpose.

**{¶ 17}** We have explained that because juvenile-delinquency procedures are not entirely civil or criminal in nature, they "occupy a unique place in our legal system." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 65. And we explained that

> [a]lthough [this] court had recognized a due process interest in juvenile court proceedings as early as 1948, * * * the understanding that the Due Process Clause of the Fourteenth Amendment applied to juvenile proceedings because of the juvenile's liberty interests was more fully developed in *Kent* [383 U.S. at 555, 86 S.Ct. 1045, 16 L.Ed.2d 84] (recognizing that "the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness" and holding that a juvenile is entitled to a hearing on the issue of whether juvenile court jurisdiction should be waived before being released to a criminal court for prosecution), and crystallized in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

*In re C.S.* at ¶ 71.

**{¶ 18}** Because the General Assembly has vested the juvenile courts with exclusive jurisdiction over juvenile cases, *see* R.C. 2151.23, juveniles are statutorily entitled to some procedure. *See Kent* at 557. Further, juveniles, like adults, have the right to be free from the imposition of a penalty or punishment without due process of law. *See In re Gault* at 13 ("neither the Fourteenth Amendment nor the Bill of Rights is for adults alone").

**{¶ 19}** Therefore, it is our duty to ascertain precisely what procedure is due in juvenile cases while "being true to the core concept of due process in a juvenile case—to ensure orderliness and fairness." *In re C.S.* at ¶ 81.

**B. Fundamental fairness and Ohio's juvenile-offender registration**

{¶ 20} Fundamental fairness does not provide an exact means by which to measure due process, but measuring due process requires examining prior limitations set by any relevant precedents in similar juvenile contexts. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 80, quoting *Lassiter*, 425 U.S. at 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (explaining that a fundamental-fairness analysis begins with consideration of "any relevant precedents"). Therefore, we must approach the analysis in this case by considering prior limitations we have imposed through our precedents in similar contexts and by determining the proper balance of the process and interests at stake given the unique role of juvenile courts.

{¶ 21} The state agrees that fundamental fairness is the framework by which this court must evaluate D.R.'s constitutional argument.[1] It contends that the First District isolated R.C. 2152.84(A)(2)(b) from the rest of the statute and failed to consider that the juvenile court may terminate D.R.'s classification three years after the completion-of-disposition hearing. The state argues that R.C. 2152.84 is fundamentally fair when applied to D.R. and to similarly situated juveniles. But our review of relevant precedents affecting Ohio's juvenile-offender-registration statutes indicates otherwise.

{¶ 22} Most recently, in *In re D.S.*, this court held that the General Assembly could impose a registration requirement on juvenile sex offenders and

1. The position in the first dissenting opinion that a different analysis is required was not an argument that was advanced by the state or D.R. The primary source of authority cited in the first dissenting opinion, *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), does not concern the juvenile-offender-registry procedures enacted by the General Assembly in this state; nor does it inform how to measure due process as it applies to procedures in Ohio's juvenile courts.

The second dissenting opinion offers a different constitutional analysis, which it argues to be the obvious and necessary approach to be applied here; yet it also is not one that was advanced by or addressed by the state or D.R. Moreover, the type of analysis promoted by the second dissenting opinion has not been adopted by this court or the United States Supreme Court for application to the provisions of the state and federal Constitutions at issue.

extend the classification assigned to a juvenile offender into adulthood. 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, at paragraph three of the syllabus. D.S., who was 13 and 14 years old at the time of the offenses that triggered his juvenile-offender registration, *id.* at ¶ 2, challenged the process the court used in ordering the continuation of his juvenile-offender-registrant status as set forth in R.C. 2152.82 and 2152.83, *id.* at ¶ 12, 40—the same statutes under which D.R. was initially designated a juvenile offender in this case.

**{¶ 23}** D.S. specifically challenged the juvenile court's imposition of registration and notification requirements "beyond the age jurisdiction of the juvenile court." *Id.* at ¶ 12. In that case, we recognized that " 'fundamental fairness to the child demands the unique expertise of a juvenile judge.' " *Id.* at ¶ 30, quoting *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 76. We found that juvenile-sex-offender registration could be imposed beyond the age of 18 or 21 because sufficient procedural safeguards had been put in place, *id.* at ¶ 37, namely, the statutes imposing the registration into adulthood provided for a hearing and the exercise of the juvenile court's discretion to consider "all relevant factors," *id.* at ¶ 33, citing R.C. 2152.82(B) and 2152.83(A)(2) and (C)(1).

**{¶ 24}** In *In re D.S.*, we distinguished the registration scheme contemplated in R.C. 2152.82 and 2152.83 from the mandatory lifetime-registration requirements imposed under former R.C. 2152.86 that were at issue in *In re C.P.* In *In re C.P.*, we held that the automatic imposition of C.P.'s juvenile-sex-offender classification offended fundamental fairness because it "undercut[] the rehabilitative purpose of Ohio's juvenile system and eliminat[ed] the important role of the juvenile court's discretion in the disposition of juvenile offenders." *Id.* at ¶ 85. We further determined that the statute at issue, which required public notification and registration, violated federal and state prohibitions against cruel and unusual punishments. *Id.* at ¶ 69. We referred to those registration and notification procedures as "the greatest possible stigmatization," *id.* at ¶ 68, in a "system where

rehabilitation is paramount, confidentiality is elemental, and individualized treatment from judges is essential," *id.* at ¶ 69.

{¶ 25} In another case, *D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, we examined the process by which a juvenile court determines whether a juvenile must be classified as a serious youthful offender. We reaffirmed that fundamental fairness dictates whether such a classification statute meets the requirements of due process. *Id.* at ¶ 61. And we disagreed with D.H.'s argument that the determination whether a juvenile should be classified as a serious youthful offender should be made by a jury. *Id.* Instead, we concluded that fundamental fairness requires that such a determination be made by a judge who is familiar with the history of the juvenile and the resources of the juvenile-justice system. *Id.* at ¶ 59.

{¶ 26} Under this court's holdings in *D.H.*, *In re C.P.*, and *In re D.S.*, juvenile registration and classification schemes may be constitutionally permissible even if they extend into adulthood, but their imposition requires procedural safeguards that include the exercise of a juvenile court's discretion. Taking into account the framework established by these decisions, we now determine whether R.C. 2152.84 is fundamentally fair when applied to D.R. and similarly situated juveniles.

### C. The constitutionality of R.C. 2152.84 as applied to D.R.

{¶ 27} The state claims that R.C. 2152.84 is fundamentally fair. It argues that a juvenile receives an initial classification hearing during which the juvenile court may exercise discretion in determining at which level the juvenile offender shall be classified. The state recognizes that juveniles like D.R.—who was 16 years old at the time of his offense and was classified at the lowest level of the offender-registration scale (Tier I)—are entitled to a hearing at the end of disposition and that the juvenile court cannot lower or terminate the classification at that time. But the state argues that R.C. 2152.85(B)(1) permits the juvenile court to exercise its

discretion and terminate the registration three years after the completion-of-disposition hearing.

{¶ 28} The initial classification hearing is not being examined here. Nor has it been challenged. We note that the discretion employed by a juvenile court at the initial classification hearing serves a purpose different from the discretion employed at the completion-of-disposition hearing. Under R.C. 2152.831, a juvenile court exercises discretion to determine which classification level it will initially impose. Part of the purpose of the completion-of-disposition hearing under R.C. 2152.84(A)(1) is to "review the effectiveness of the disposition and of any treatment." That statute requires that the juvenile court assess the juvenile's risk of reoffending and "determine whether the prior classification of the child as a juvenile registrant should be continued or terminated * * * or modified" under R.C. 2152.84(A)(2). The completion-of-disposition hearing is therefore built on the juvenile court's individualized risk assessment of the juvenile's potential to reoffend and its determination of the effectiveness of the juvenile's treatment.

{¶ 29} But for D.R.—who was 16 years old when he committed a sexually oriented offense and who was initially classified as a Tier I offender—and similarly situated juveniles, R.C. 2152.84(A)(2)(b) eliminates all judicial discretion and renders any review of the effectiveness of treatment or risk of reoffense meaningless. D.R.'s Tier I classification, which constitutes a punishment for his juvenile delinquency, *see State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 10-21, is continued into his adulthood automatically.

{¶ 30} Although the registration and notification procedures may have been harsher in *In re C.P.* than those at issue today, it was the automatic nature of the process in that case that offended due process. 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 85. R.C. 2152.84(A)(2)(b) is no different in this respect. And just as we have held that it is constitutional for registration to continue into adulthood for 13- and 14-year-old offenders so long as the court makes that

12

determination on an individualized basis, *see In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, at ¶ 36-37, we conclude that the same individualized determination is necessary for registration to continue into adulthood for 16- and 17-year-old offenders.

{¶ 31} Individualized assessments and judicial discretion are especially necessary in cases such as D.R.'s. In a system designed to advance rehabilitation over punishment and to shield juveniles from the stigma of their juvenile delinquency, D.R.'s automatic, continued status as a juvenile-offender registrant into adulthood is fundamentally unfair. Any decision to continue his classification requires a grounded determination by a juvenile court that such a penalty is warranted. R.C. 2152.84(A)(2)(b) provides no such mechanism.

{¶ 32} The fact that D.R. could request termination of his registrant status after three years does little to mitigate the incongruities inherent in the process. The juvenile-court magistrate who presided over D.R.'s completion-of-disposition hearing found that D.R. had successfully completed all conditions the court had imposed on him during his disposition, that he had not been adjudicated delinquent for or convicted of any subsequent offenses, that he had successfully completed his period of probation, that he had successfully completed sex-offender treatment, and that he had graduated from high school and enrolled in college. D.R. was released from probation at that time, and the juvenile court seemed prepared to also terminate D.R.'s juvenile-offender classification.

{¶ 33} But at that critical moment, at the end of D.R.'s disposition, the juvenile court had no discretion to determine whether D.R.'s classification should be extended into adulthood—beyond the shield of the juvenile-justice system. R.C. 2152.84(A)(2)(b) required that continuation, with no judicial discretion permitted to recognize D.R.'s rehabilitation. While D.R. had no right to immediate termination of his classification at the end of his disposition, he also lost the right to be treated any longer as a juvenile offender—the status given to him by the state.

He was caught between the two goals of the juvenile-justice system—that is, between being rehabilitated as a juvenile, which he was no longer, and entering adulthood with a moniker that was meant to ensure public safety and accountability for his wrongdoing as a juvenile. *See* R.C. 2151.01 and 2152.01. Because the two goals do not perfectly align, D.R. received "the worst of both worlds," *Kent*, 383 U.S. at 556, 86 S.Ct. 1045, 16 L.Ed.2d 84, under the fundamentally unfair application of R.C. 2152.84(A)(2)(b) to his case.

{¶ 34} Because of D.R.'s age when he committed his sexually oriented offense, the juvenile court was effectively prohibited by R.C. 2152.84(A)(2)(b) from exercising its discretion at the completion-of-disposition hearing to either continue D.R.'s Tier I classification beyond age 18 or terminate the classification upon a finding of good cause, since D.R. had been adjudged sufficiently rehabilitated. Given the special nature of juvenile-justice proceedings and the interests at stake in those proceedings, fundamental fairness requires that the juvenile court exercise discretion at the completion-of-disposition hearing to determine whether the continuation of a Tier I classification that was initially imposed on a juvenile who was 16 or 17 years old at the time of the offense is warranted.

## III. CONCLUSION

{¶ 35} Because R.C. 2152.84(A)(2)(b) did not allow the juvenile court to exercise its discretion at the completion-of-disposition hearing and make its own determination whether continuation of D.R.'s Tier I offender status into adulthood was necessary or warranted, the statute is fundamentally unfair as applied to D.R. and violates due process. The judgment of the First District Court of Appeals is affirmed, and this cause is remanded to the juvenile court with instructions to hold a new completion-of-disposition hearing and to determine whether D.R.'s Tier I classification should be continued or terminated under R.C. 2152.84(A)(2).

Judgment affirmed

and cause remanded.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**FISCHER, J., dissenting.**

{¶ 36} In this case, this court is asked to determine whether R.C. 2152.84 violates procedural-due-process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution by failing to give juvenile courts the discretion to declassify Tier I juvenile-offender registrants at the completion-of-disposition stage. Because no existing protected substantive right is at stake during the completion-of-disposition stage, I would hold that the process provided by the General Assembly in R.C. 2152.84 regarding Tier I juvenile-offender registrants complies with state and federal procedural due process and is fundamentally fair. Therefore, I respectfully dissent.

{¶ 37} The United States Supreme Court has clearly stated that "[p]rocess is not an end in itself" and that procedural due process serves "to protect a substantive interest to which an individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Thus, to find a violation of procedural due process—as the majority opinion does— an individual *must first* identify an existing protected substantive right.[2]

{¶ 38} While appellant, D.R., identifies a number of interests at stake in a completion-of-disposition hearing, neither the First District Court of Appeals nor D.R. have identified an existing *protected* substantive right. While juveniles may

_____

2. The majority opinion states that neither of the parties argued in favor of this analysis. But this court must apply correct legal principles, regardless of the parties' arguments. *See Turner v. CertainTeed Corp.*, 155 Ohio St.3d 149, 2018-Ohio-3869, 119 N.E.3d 1260, ¶ 11 ("We owe no deference to the lower court's decision, nor are we limited to choosing between the different interpretations of the statute presented by the parties").

have a protected substantive right in not being unfairly classified as sex offenders, D.R. was provided sufficient procedural protections at his initial sentencing and classification hearing. But juveniles do not have a statutory or constitutional right to have sex-offender classifications terminated immediately on the completion of their disposition. *See In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 1 ("the imposition of classification upon release from a secure facility and for a time period beyond the offender's attainment of age 18 or 21 does not violate the juvenile offender's due-process rights or the prohibitions against double jeopardy in the United States and Ohio Constitutions"). Nor do juveniles have a statutory right to unlimited juvenile-court discretion over registration obligations. *See* R.C. 2152.83(A)(1); *In re D.S.* at ¶ 13-14. And in Ohio, juvenile courts are creatures of statute. *See* R.C. Chapter 2151; *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 14.

{¶ 39} The majority opinion never points to any specific constitutionally protected right, and it never provides a deep-dive analysis to explain how the continuation of the sex-offender classification is a protected liberty interest, particularly in light of the fact that the Tier I designation in this case is not permanent. Rather, it is mandatory for only three years. *See* R.C. 2152.85(B)(1). Thus, the majority opinion's implication that this designation is somehow a permanent problem for D.R. is just not true. And this point is important because it distinguishes this case from *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, a case on which the majority relies.

{¶ 40} In *In re C.P.*, this court found a violation of due process because the juvenile court lacked any discretion over the imposition of an automatic, lifetime, adult punishment—mandatory sex-offender registration—for a juvenile offender. *Id.* at ¶ 86. Thus, due-process rights are violated when there is an automatic imposition of a significant penalty without affording any discretion to the juvenile court. *Id.* at ¶ 77-78 (concluding that the automatic imposition of a lifetime

16

punishment, without an opportunity for reconsideration for 25 years and without affording any discretion to the juvenile court, is fundamentally unfair). That is not the situation in the case at bar.

{¶ 41} This case is more similar to *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184. In that case, D.S. argued that his due-process rights were violated when a juvenile court imposed a juvenile-sex-offender classification on him that would continue past the age of majority. This court held that "[w]hat process is due depends on considerations of fundamental fairness in a particular situation," *id.* at ¶ 28, and that the punishment imposed on D.S. was distinguishable from the irrevocable, automatic, lifetime classification that was held to be a violation of due process in *In re C.P.*, *In re D.S.* at ¶ 32. This court held that the classification at issue in *In re D.S.* did not violate due process, because the juvenile court maintained sufficient discretion in determining the sentence, setting the original classification, and later reviewing the classification. *Id.* at ¶ 33-36.

{¶ 42} Likewise, when viewing the statutory scheme as a whole in this case, the juvenile court maintains sufficient discretion regarding tier classification for individuals like D.R. Therefore, the statutory scheme meets the fundamental-fairness requirements of due process. First, under R.C. 2152.83, the juvenile court has discretion to determine the tier in which the juvenile offender will be placed initially. Second, under R.C. 2152.85(B)(1), the juvenile court has discretion to "declassify" individuals like D.R. a mere three years after the completion-of-disposition hearing. Appellee, the state, is correct that the scheme in this case is distinctly different from the scheme that was found unconstitutional by this court in *In re C.P.*

{¶ 43} Here, each of the alleged protected interests identified by D.R. are given sufficient consideration throughout the classification process set forth in R.C. Chapter 2152. The fact that he could not be "declassified" at the completion-of-disposition stage is a policy choice made by the General Assembly. The legislature

has determined it to be appropriate that older juvenile offenders—those who were 16 or 17 years old at the time of the offense and who will necessarily have received less treatment and supervision than younger offenders who the juvenile court can oversee for many years—should have to wait just a few years to be "declassified."

{¶ 44} One may question the wisdom of the General Assembly in creating such a policy, but because the policy provides sufficient procedural protections and does not run afoul of fundamental-fairness requirements, it is not for this court to judge whether the policy is a good one. Maybe the policy should be reviewed; maybe not. This court, however, lacks the constitutional authority to impose its own policy views on the citizens of Ohio and must leave that determination to the legislative branch. *See Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 40; *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 31.

{¶ 45} Indeed, to adopt the First District's position below, as the majority opinion does, ultimately requires this court to legislate from the bench. The court of appeals remanded the case for a new completion-of-disposition hearing to allow the juvenile court to exercise discretion to continue D.R.'s Tier I juvenile-offender-registrant classification or to "declassify" him. 2021-Ohio-1797, 173 N.E.3d 103, ¶ 17. In affirming the judgment of the First District, the majority opinion effectively amends R.C. 2152.84 to provide juvenile courts the option of "declassifying" Tier I juvenile-offender registrants at the completion-of-disposition stage. However, without an existing protected substantive right at issue, this court should reverse the court below to protect the separation of powers inherent in Ohio's Constitution. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753.

{¶ 46} For these reasons, I would hold that the process provided by the legislature in R.C. 2152.84 regarding Tier I juvenile-offender registrants complies with state and federal due process and is fundamentally fair. Therefore, I dissent.

_____

**DEWINE, J., dissenting.**

{¶ 47} The Ohio legislature passed a law that requires all 16- and 17-year-olds who commit sex crimes to register as sex offenders for at least three years after their juvenile cases end. The majority says that this law is unconstitutional because it violates the *procedural*-due-process rights of these juveniles under the United States Constitution. The majority's determination that the law violates the federal constitution is wrong. But perhaps one shouldn't be surprised: the majority's insistence that the claim be analyzed under the rubric of procedural due process reveals its fundamental misunderstanding of this body of constitutional law.

## Background

{¶ 48} Under the Adam Walsh Act, juveniles of a certain age who commit sex offenses are designated as sex offenders. *See* 2007 Am.Sub.S.B. No. 10. The juvenile court sets the juvenile offender's classification level, which determines how often he must register as a sex offender. R.C. 2152.83(A)(1). Different rules apply depending on the age of the juvenile at the time of the offense. Here, we deal with the rules for those juveniles who committed a sexually oriented offense at age 16 or 17. Once a juvenile offender completes his disposition (essentially, the sentence imposed by the juvenile court), the court may reduce the offender's classification level, but the court cannot completely remove the sex-offender classification at that time. R.C. 2152.84(A)(2). The first time the classification may be removed is at the offender's initial review hearing, which, if requested by the juvenile, occurs three years after the completion of disposition. R.C. 2152.85. In other words, the statutory scheme creates a blanket rule that all juveniles who commit sex offenses when they are 16 or 17 years old must register as a sex offender for at least three years after the completion of their disposition.

{¶ 49} D.R. was 16 years old at the time of his offense. The juvenile court classified him as a Tier I sex offender, which is the tier that imposes the fewest

registration obligations. Once D.R. completed his juvenile disposition, he asked the juvenile-court judge to remove his sex-offender classification. But, of course, the court did not have authority to remove the classification at that particular time, *see* R.C. 2152.84(A)(2), so the judge denied the motion.

{¶ 50} D.R. appealed, arguing that the statutory scheme is unconstitutional because it does not allow the juvenile court to remove his classification until three years after the completion of his disposition. The First District agreed, holding that the statute violated D.R.'s procedural-due-process rights under the United States and Ohio Constitutions.[3] 2021-Ohio-1797, 173 N.E.3d 103, ¶ 8-9, 16. In doing so, the First District noted that this court has treated the federal and state provisions as equivalent. *Id*. at ¶ 9, citing *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15 ("*Aalim II*"). D.R. has not advanced any argument that the Due Course of Law Clause under Article I, Section 16 of the Ohio Constitution provides different due-process protections than its federal counterpart, so I will confine my analysis to the federal provision.

{¶ 51} The majority now affirms, following the same analysis as the First District. It concludes that D.R.'s procedural-due-process rights are violated by the law requiring D.R. to register as a sex offender for at least three years following the end of his disposition. In the majority's view, the law is constitutionally infirm because it does not allow a judge to end D.R.'s sex-offender-registration requirements early.

### Procedural Due Process vs. Substantive Due Process

{¶ 52} The astute reader may already be confused. What I have described is a substantive-due-process claim. Yet both the majority and the First District granted relief under the procedural component of the Due Process Clause. Because

---

3. Because the First District found a violation of D.R.'s procedural-due-process rights, it did not reach D.R.'s arguments that the law violated his right to substantive due process or the constitutional protection against cruel and unusual punishment under the United States and Ohio Constitutions. *In re D.R.*, 2021-Ohio-1797, 173 N.E.3d 103, ¶ 16.

the majority doesn't seem to understand the difference between the two types of due-process analysis, let me provide the type of overview a law student might receive in a first-year constitutional-law class.

{¶ 53} The text of the Due Process Clause is familiar enough. It provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Fourteenth Amendment to the U.S. Constitution, Section 1. While on its face that provision would seem to deal only with the adequacy of procedures employed by the government, the United States Supreme Court instructs that the clause contains both a procedural and a substantive component. Procedural due process is concerned with the adequacy of procedures used: it requires the government "to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property.' " *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also* Geoffrey R. Stone, et al., *Constitutional Law*, 953 (7th Ed.2013) (procedural due process implicates "the question when the clause requires procedural safeguards to accompany substantive choices"). When reviewing the procedures employed in juvenile-delinquency proceedings, the Supreme Court has said that the applicable due-process standard is fundamental fairness. *McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion), citing *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

{¶ 54} Substantive due process, on the other hand, reviews the content of a legislative enactment. As the Supreme Court has explained, the substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels* at 331. When reviewing a substantive-due-process challenge to a statutory requirement that impairs a life, liberty, or property interest, courts ordinarily consider whether the requirement is rationally related to a legitimate government objective. *See, e.g.*,

*Reno v. Flores*, 507 U.S. 292, 303, 305, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Toledo v. Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152, ¶ 33. When the right in question is a fundamental liberty interest, however, the state may impair that interest only if the infringement is narrowly tailored to serve a compelling governmental interest. *Reno* at 302.

{¶ 55} D.R.'s challenge obviously sounds in substantive due process. He is not arguing that there has been some procedural unfairness in the way the government has applied the law to him. He doesn't like the law. He isn't saying that a decision-maker short-shrifted him by taking away his rights through a process that was inadequate; he is saying that the legislature cannot pass a law that forces *every* 16- and 17-year-old sex offender to register for three years after his juvenile disposition ends.

{¶ 56} As a leading treatise explains,

> When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process— the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees.

3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure*, Section 17.8(c), 130 (5th Ed.2012); *see also* Stone, *Constitutional Law* at 972 (for laws of general application, "[p]rocesses of representation are a sufficient guarantee of legitimacy, thus serving the same ends as a hearing"). The Supreme Court explained long ago that with regard to general statutes affecting individuals, "[t]heir rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi-Metallic Invest. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

**{¶ 57}** Thus, while framed as a procedural-due-process challenge, D.R.'s argument is aimed at the substance of the law itself.

### D.R.'s procedural-due-process claim fails

**{¶ 58}** The United States Supreme Court has firmly rejected the attempt to recast a substantive-due-process claim like D.R.'s under the procedural component of the Due Process Clause. *See Connecticut Dept. of Pub. Safety v. Doe*, 538 U.S. 1, 7-8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). D.R. contends that guarantees of procedural due process require that instead of being subject to a blanket rule maintaining his classification for three years after disposition, he should be entitled to a hearing in which he can show that he no longer poses a threat to the public and that his continued classification will not serve the governmental policies the law was designed to carry out. This is almost precisely the argument that the Supreme Court shot down in *Connecticut Dept. of Pub. Safety*.

**{¶ 59}** There, a convicted sex offender brought a procedural-due-process challenge to a statute that required public disclosure of his registration information based solely on his status as a sex offender, without affording him a hearing and an individualized determination whether he was currently dangerous. The court explained that procedural due process requires the government to provide an opportunity to prove or disprove a particular fact only when that fact is relevant to the legal inquiry at issue. *Id*. at 7, citing *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Thus, the challenge failed, because "the fact that respondent [sought] to prove—that he [was] not currently dangerous—[was] of no consequence under Connecticut's Megan's Law." *Id*.

**{¶ 60}** The court elaborated on the distinction between procedural- and substantive-due-process claims:

> Unless respondent can show that that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise. * * * States are not barred by principles of "*procedural* due process" from drawing such classifications. Such claims "must ultimately be analyzed" in terms of substantive, not procedural, due process.

(Emphasis added in *Michael H.*) *Id.* at 7-8, quoting *Michael H. v. Gerald D.*, 491 U.S. 110, 120-121, 109 S.Ct. 2333, 105 L.Ed. 2d 91 (1989) (plurality opinion). Thus, the court held: "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8; *see also Bell v. Burson*, 402 U.S. 535, 541-542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("a hearing which excludes consideration of an element essential to the decision" is not meaningful for the purposes of the Due Process Clause).

{¶ 61} In concurrence, Justice Scalia summed up why dressed-up substantive-due-process claims like D.R.'s are bound to fail:

> [E]ven if the requirements of Connecticut's sex offender registration law implicate a liberty interest of respondents, the categorical abrogation of that liberty interest by a validly enacted statute suffices to provide all the process that is "due"—just as a state law providing that no one under the age of 16 may operate a motor vehicle suffices to abrogate that liberty interest. Absent a claim (which respondent has not made here) that the liberty interest in question is so fundamental as to implicate so-called "substantive" due process, a properly enacted law can eliminate it. That is ultimately why, as the Court's opinion demonstrates, a convicted

sex offender has no more right to additional "process" enabling him to establish that he is not dangerous than (in the analogous case just suggested) a 15-year-old has a right to "process" enabling him to establish that he is a safe driver.

*Connecticut Dept. of Pub. Safety*, 538 U.S. at 8-9, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (Scalia, J., concurring).

**{¶ 62}** And that is the problem here. The law requires the court to continue D.R.'s classification at the completion of his disposition, regardless of the threat he currently poses to the public. The facts that D.R. wishes to have an opportunity to prove—that he has been fully rehabilitated and is no longer a danger to others—are irrelevant to his continued classification as a juvenile sex offender under the statutory scheme.

**{¶ 63}** Indeed, following *Connecticut Dept. of Pub. Safety*, courts have routinely rejected claims like D.R.'s that have been brought by other juveniles. *See, e.g.*, *U.S. v. Juvenile Male*, 670 F.3d 999, 1014 (9th Cir.2012) ("Additional process is only necessary where it gives a sex offender the ability to prove or disprove facts related to the applicability of the registration requirement"); *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir.2007) (holding that *Connecticut Dept. of Pub. Safety* "foreclosed any procedural due process claim" against automatic registration for juvenile sex offenders); *see also State v. N.R.*, 314 Kan. 98, 495 P.3d 16 (2021); *State v. Eighth Judicial Dist. Court of the State of Nevada (Logan D.)*, 129 Nev. 492, 306 P.3d 369 (2013); *In re Z.B.*, 2008 S.D. 108, 757 N.W.2d 595 (2008); *People in Interest of C.B.B.*, 75 P.3d 1148 (Colo.App.2003); *In re J.R.*, 341 Ill.App.3d 784, 793 N.E.2d 687 (Ill.App.2003).

**{¶ 64}** The General Assembly requires any 16- and 17-year-old who has been adjudicated delinquent for committing a sexually oriented offense to be classified as a sex offender for at least three years following the completion of his

disposition. R.C. 2152.84(A)(2) and 2152.85. In other words, it is the offender's age and the fact of his adjudication that trigger the duty to register. And juvenile offenders like D.R. have already been given " 'a procedurally safeguarded opportunity to contest' " those facts through the adjudication process. *Juvenile Male* at 1014, quoting *Doe v. Tandeske*, 361. F.3d 594, 596 (9th Cir.2004). No additional process is required. *Id.* ("adequate procedural safeguards at the conviction stage are sufficient to obviate the need for any additional process at the registration stage").

**{¶ 65}** Thus, D.R.'s procedural-due-process claim fails.

### We should put out the dumpster fire that is our precedent

**{¶ 66}** So how could the First District and the majority make such a basic mistake? Surely, they must understand the difference between substantive and procedural due process, right? Well, the answer is that it is not entirely their fault. This court has some poorly reasoned precedent out there. We ought to clean it up.

**{¶ 67}** The confusion originates in this court's decision in *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. That case involved a due-process challenge to another juvenile-sex-offender-registration statute. The law at issue automatically imposed lifetime registration and notification requirements on certain juvenile offenders. In reviewing the claim, the Fourth District Court of Appeals properly concluded that C.P.'s challenge was brought under the substantive component of the Due Process Clause and found no constitutional violation. *See In re C.P.*, 4th Dist. Athens No. 09CA41, 2010-Ohio-1484, ¶ 8-9, 16-17.

**{¶ 68}** But this court reversed and made a mess of things in the process. Because the classification in question applied generally to all juveniles convicted of certain charges, the challenge obviously invoked the substantive component of the Due Process Clause. But rather than evaluate C.P.'s claim under substantive-due-process standards, this court applied a *procedural*-due-process standard. This

court adopted the United States Supreme Court's procedural-due-process standard of "fundamental fairness," which was developed to address the adequacy of procedures employed in juvenile proceedings. *See McKeiver*, 403 U.S. at 541-543, 91 S.Ct. 1976, 29 L.Ed.2d 647 (plurality opinion), citing *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. It then misused this standard to address the substantive fairness of a generally applicable law enacted by the General Assembly.

{¶ 69} *In re C.P.* was obviously wrongly decided: it used a procedural-due-process standard to strike down a generalized enactment. But this court has never quite said so. We attempted to distinguish *In re C.P.* in *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 32-37, but we stopped well short of rejecting its faulty logic.

{¶ 70} In *State v. Aalim*, 150 Ohio St. 3d 463, 2016-Ohio-8278, 83 N.E.3d 862 ("*Aalim I*"), this court nearly made the same mistake as the majority does here. In that case, this court initially sought to incorporate the procedural-due-process standard of fundamental fairness into the Ohio Constitution and use it to strike down a generally applicable statute that required that juveniles who had committed certain offenses be bound over to the adult court automatically. *Id.* at ¶ 2, 18-20. But fortunately, the court recognized its error and reconsidered its erroneous judgment. On reconsideration, the lead opinion recognized that procedural due process was satisfied because Aalim had received a hearing, at which he was represented by counsel, on the only factors that were relevant under the statute: his age and whether there was probable cause to believe he had committed the offense. *Aalim II*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, at ¶ 27. A concurring opinion elaborated on the confusion in our prior case law, explaining that a "challenge to a generalized legislative determination—for example, that all juveniles of a certain age who are charged with certain qualifying crimes must be

tried in adult court—is made under the substantive component of the Due Process Clause." *Id*. at ¶ 41 (DeWine, J., concurring).

**{¶ 71}** One might have thought that *Aalim II* would have eliminated the confusion caused by *In re C.P.* But apparently not. Here, the First District relied heavily on *In re C.P.*, and the majority breathes new life into its demonstrably erroneous analysis today.

**{¶ 72}** We really messed up when we decided *In re C.P*., and we should say so. We should realign our interpretation of the Fourteenth Amendment to the United States Constitution with that of the United States Supreme Court and make clear that substantive-due-process claims are to be assessed under substantive-due-process standards. The Supremacy Clause of the United States Constitution leaves us no other option. U.S. Constitution, Article VI, cl. 2; *Martin v. Hunter's Lessee*, 14 U.S. 304, 340-341, 4 L.Ed. 97 (1816).

### Conclusion

**{¶ 73}** One might fairly criticize the wisdom of the statutory registration requirement at issue in this case. Perhaps it should be changed. But it is not our place to make such policy choices for the state.

**{¶ 74}** The majority's decision today perpetuates a glaring error in our due-process precedent and erroneously invalidates a duly enacted statute along the way. I would bring our due-process analysis back in line with the United States Supreme Court and conclude that there is no procedural-due-process violation in this case. I would therefore reverse the contrary judgment of the First District Court of Appeals and remand the case to that court for it to consider D.R.'s remaining assignments of error.

KENNEDY, J., concurs in the foregoing opinion.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney, for appellant.

28

Raymond T. Faller, Hamilton County Public Defender, and Jessica Moss, Assistant Public Defender, for appellee.

Steven L. Taylor, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Timothy Young, Ohio Public Defender, and Lauren Hammersmith and Katherine Sato, Assistant Public Defenders, urging affirmance for amicus curiae Office of the Ohio Public Defender.

_____