RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0152p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-5042

DIEGO GONZALEZ LOPEZ,

*Defendant-Appellee*.

────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:17-cr-00062-1—Pamela Lynn Reeves, District Judge.

Argued:  January 16, 2019

Decided and Filed:  July 10, 2019

Before:  BOGGS, KETHLEDGE, and STRANCH, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:**  Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellant.  Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellant.  Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellee.

────────────────

## OPINION

────────────────

KETHLEDGE, Circuit Judge.   The Executive cannot render unconstitutionally vague a statute that Congress enacted as clear.   Here, the government charged Diego Lopez with possessing a firearm as an alien "illegally or unlawfully in the United States[.]"   18 U.S.C. § 922(g)(5)(A).  The meaning of that provision is clear enough, but the district court thought that § 922(g)(5)(A) as applied to Lopez was unconstitutionally vague in light of certain administrative guidance from the Department of Homeland Security.  We respectfully disagree and reverse.

In 2012, Secretary Janet Napolitano of the Department of Homeland Security announced in a memorandum that the Department would exercise what she called "prosecutorial discretion" as to certain aliens who had entered this country without authorization as children.  Under this program—known as Deferred Action for Childhood Arrivals, or DACA—aliens who met certain criteria could apply for "deferred action," meaning that the Department would defer any removal proceedings against them for a certain period (typically two years, subject to renewal).

Diego Lopez, along with his family, entered the United States without authorization when he was four years old.  Years later, Lopez graduated from high school and applied for deferred action under DACA, which he received in January 2017.  Three months later Lopez was arrested for driving under the influence of alcohol.  Inside his vehicle officers found a 9mm pistol and a 12-gauge shotgun.  Soon thereafter, a federal grand jury indicted Lopez on one count of being an alien in possession of a firearm while illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A).

Lopez moved to dismiss the indictment, arguing that, at the time of his arrest, he had not been "illegally or unlawfully in the United States" under § 922(g)(5)(A) and that the statute was unconstitutionally vague as applied to him.  The district court held that Lopez had been "illegally or unlawfully in the United States" at the time of his arrest, but granted his motion on the ground that § 922(g)(5)(A) was unconstitutionally vague.  We review that ruling de novo.  *See United States v. Hart*, 635 F.3d 850, 856 (6th Cir. 2011).

The Due Process Clause prohibits "laws that are impermissibly vague."  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  This prohibition—often called the "void-for-

vagueness" doctrine—"requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited[.]" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Even "more important[,]" the statute must "establish minimal guidelines to govern law enforcement." *Id.* at 358. Thus, "the doctrine is a corollary of the separation of powers—requiring that *Congress*, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (plurality opinion; emphasis added); *see also id.* at 1227 ("legislators may not 'abdicate their responsibilities for setting the standards of the criminal law'") (Gorsuch, J., concurring in the judgment) (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)).

The void-for-vagueness doctrine therefore focuses on the actions of Congress, not the other branches—which is the problem with Lopez's argument here. Section 922(g)(5)(A) as enacted by Congress bars aliens who are "illegally or unlawfully in the United States" from possessing a firearm. 18 U.S.C. § 922(g)(5)(A). Those terms—"illegally or unlawfully"—are not defined by the statute, but are pedestrian and clear. "Illegal" means "contrary to" or "forbidden by law[.]" *Black's Law Dictionary* 864 (10th ed. 2014); *Webster's Third New International Dictionary* 1126 (2002). "Unlawful" means "[n]ot authorized by law[.]" *Black's Law Dictionary* 1771 (10th ed. 2014); *Webster's Third New International Dictionary* 2502 (2002). Nobody here argues otherwise. Thus, the phrase "illegally or unlawfully in the United States" refers to aliens who are "in the United States" contrary to or without authorization by law. *See United States v. Arrieta*, 862 F.3d 512, 515 (5th Cir. 2017). And § 922(g)(5)(A) otherwise plainly states that such aliens must not possess firearms. Congress did its work with ample clarity, therefore, to pass constitutional muster here.

Equally clear is that Lopez was an alien within the scope of § 922(g)(5)(A). Lopez himself all but admitted as much when he applied for relief under DACA, since to be eligible for relief he was required to attest that he "[h]ad no lawful status on June 15, 2012[.]" Frequently Asked Questions, U.S. Citizenship and Immigration Services, https://www.uscis.gov/archive/frequently-asked-questions. (That date is the date on which DACA was announced.) Nor did the Secretary's decision to grant Lopez relief change his status as an alien "illegally or unlawfully in the United States." Secretary Napolitano herself described

DACA as an "exercise of prosecutorial discretion," Memorandum from Secretary Janet Napolitano, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children 1 (June 15, 2012)—discretion, specifically, not to seek removal of aliens who meet certain criteria, one of them being that they are in the country unlawfully. And in announcing the program the Secretary herself stated, correctly, that "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." *Id*. at 3. The Secretary's grant of deferred action under DACA therefore did not—and could not—change Lopez's status as an alien "illegally or unlawfully in the United States" for purposes of § 922(g)(5)(A). Instead that relief represented only the Secretary's decision temporarily not to prosecute him for that status.

Yet Lopez suggests that two other statutory provisions indicate that, once he was granted relief under DACA, he was "lawfully present" in the United States. The first provision, 8 U.S.C. § 1182(a)(9)(B), bars for a certain time (three years or ten) readmission of aliens who departed the United States after being unlawfully present here for more than 180 days (*see* § 1182(a)(9)(B)(i)(I)) or for more than one year (*see* § 1182(a)(9)(B)(i)(II)). More to the point, § 1182(a)(9)(B)(ii) provides that, "*[f]or purposes of this paragraph*," any "period of stay authorized by the Attorney General" shall not count towards the alien's period of unlawful presence in the United States. (Emphasis added.) But § 922(g)(5)(A) of course is not "this paragraph" as used in § 1182(a)(9)(B)(ii), and thus whatever implication Lopez seeks to draw from § 1182(a)(9)(B)(ii) does not extend to § 922(g)(5)(A). Section 1182(a)(9)(B)(ii) therefore says nothing and changes nothing as to whether Lopez was in the United States unlawfully for purposes of possessing a firearm in violation of § 922(g)(5)(A). Similarly, 8 U.S.C. § 1611(b) provides that "[s]ubsection (a)" of that same section—which generally bars non-"qualified" aliens from receiving "any Federal public benefit"—"shall not apply" to certain aliens who are "lawfully present in the United States as determined by the Attorney General[.]" *Id*. § 1611(b)(2)-(4). But that exception by its terms applies only to the proscription in § 1611(a); and meanwhile Congress chose not to include any exception to the proscription in § 922(g)(5)(A). Hence neither of these provisions do anything to obscure Lopez's status as an alien illegally or unlawfully in the United States for purposes of § 922(g)(5)(A).

Lopez otherwise contends that § 922(g)(5)(A) is rendered vague by the Department's answers to some "Frequently Asked Questions" about DACA. One of those answers—to the question, "[w]hat is deferred action?"—stated that, "[f]or purposes of future inadmissibility based upon unlawful presence, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect." Frequently Asked Questions, *supra* (emphasis omitted). That statement merely tracks the text of § 1182(a)(9)(B)(ii), discussed above, and like that provision is irrelevant to the question whether Lopez violated § 922(g)(5)(A).

The next sentence of the answer to the FAQ does contain some loose language to the effect that a DACA recipient is "considered by DHS to be lawfully present during the period deferred action is in effect." Frequently Asked Questions, *supra*. But the question here is whether the relevant "penal *statute*[,]" *Kolender*, 461 U.S. at 357 (emphasis added), is unconstitutionally vague. That inquiry concerns whether "*Congress*, rather than the executive or judicial branch," has properly "define[d] what conduct is sanctionable and what is not." *Dimaya*, 138 S. Ct. at 1212 (plurality opinion; emphasis added); *see also United States v. Davis*, 139 S. Ct. 2319, 2323 (2019) ("Only the people's elected representatives in Congress have the power to write new federal criminal laws."). Congress, as explained above, defined that conduct clearly enough in § 922(g)(5). Moreover, if even a formal regulation "cannot create an ambiguity when the words on the page are clear," *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018), then surely some lesser form of agency commentary cannot create such an ambiguity—let alone one that renders the statute unconstitutional. The contours of federal criminal law are not drawn by agency answers to "Frequently Asked Questions."

Lopez separately argues (for the first time on appeal) that he lacked knowledge that he was an alien illegally or unlawfully in the United States. The Supreme Court recently held that under § 922(g)(5)(A) a defendant must know his status as an alien "illegally or unlawfully in the United States[.]" *See Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019). Whether the government has or may yet adequately allege that element, however, is an issue we leave to the district court to address in the first instance on remand. *See Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 648 (6th Cir. 1996).

\* \* \*

The district court's order dismissing the indictment is reversed, and the case is remanded for proceedings consistent with this opinion.