[Cite as *In re P.R.*, 2019-Ohio-4751.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: P.R. | : | APPEAL NOS. C-180166 |
| | | C-180167 |
| | : | TRIAL NOS. 08-9871x |
| | | 08-9874x |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:November 20, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*McKinney & Namei Co., LPA,* and *David L. Dawson*, for Appellant P.R.

**ZAYAS, Presiding Judge.**

{¶1} P.R. appeals from the juvenile court's denial of his motions to withdraw his admissions and vacate his adjudications and his petition for declassification. P.R. contends that his admissions to conduct that would have constituted rape and gross sexual imposition, if committed by an adult, should have been set aside because the juvenile court did not advise him that his admissions could have immigration consequences as required by R.C. 2943.031. He further argues that the juvenile court erred in denying his request to be reclassified as a Tier I juvenile offender registrant. Finding his assignments of error without merit, we affirm the juvenile court's judgments.

{¶2} In 2008, when P.R. was 14 years old, he admitted that he engaged in sexual conduct and sexual contact with a seven-year-old girl. P.R. was given suspended commitments, placed on probation, ordered to attend the residential program at Hillcrest, and classified a Tier III sex offender. At the end-of-disposition hearing, the juvenile court reclassified him a Tier II sexual offender.

*The Hearing on the Motions*

{¶3} In 2016, P.R. filed motions to withdraw his admissions pursuant to Crim.R. 32.1 and R.C. 2943.031 alleging that P.R. was not given the immigration warnings as mandated by R.C. 2943.031 before entering his admissions. Initially, P.R. argued that his adjudications for aggravated felonies rendered P.R. deportable. At the hearing, P.R.'s counsel explained that P.R. had not been placed in deportation proceedings, but, the adjudication could affect P.R.'s eligibility for Deferred Action for Childhood Arrivals ("DACA"). He further explained that juvenile adjudications are frequently considered in evaluating an individual's good moral character for DACA eligibility.

{¶4} The state argued that R.C. 2943.031 does not apply to juvenile adjudications, and that if the legislature had intended to apply the statute to juveniles, it would have included the term "adjudicated." The state further argued that the withdrawal of the admissions would prejudice the state because the juvenile court would no longer have jurisdiction over P.R. because he is 25, the DACA pathway occurred long after P.R.'s adjudication, and the seven-year delay was problematic and prejudicial to the state.

{¶5} The juvenile court found that R.C. 2943.031, the advisement it requires, and the remedy for a failure to provide the advisement do not apply to juvenile adjudications because the statute refers to guilty pleas and convictions and does not include admissions or adjudications. Further, Crim.R. 32.1, which allows for the withdrawal of a plea in a criminal case, does not apply to juvenile proceedings.

{¶6} Instead, the juvenile court reviewed the record to determine whether the magistrate complied with Juv.R. 29(D) when accepting P.R.'s admissions. The court concluded that the magistrate properly advised P.R. of the nature of the allegations and consequences of the admissions.

{¶7} Finally, the juvenile court found that the decision to continue P.R.'s classification as a Tier II offender was supported by sufficient evidence. The court reviewed all relevant factors, including the nature of the offenses, the age of the victim, subsequent treatment, the risk assessment, and P.R.'s criminal history and determined that P.R. did not present sufficient evidence to support a declassification.

{¶8} On appeal, P.R. raises two assignments of error. In his first assignment of error, P.R. argues that the court erred by denying his motion to

withdraw his admissions because P.R. was not advised of any potential immigration consequences pursuant to R.C. 2943.031, the juvenile court should have allowed him to withdraw the admissions because he was not advised of the potential immigration consequences of the admissions, and his motion to vacate should be remanded to consider whether P.R.'s trial counsel was ineffective for failing to advise him of the immigration consequences of his admissions. We must first determine whether R.C. 2943.031 applies to juvenile adjudications.

### *R.C. 2943.031 Does Not Apply to Juvenile Adjudications*

{¶9} We review issues of statutory construction de novo. *In re J.F.*, 2017-Ohio-7675, 97 N.E.3d 999, ¶ 18 (1st Dist.). When interpreting a statute, we must first look to the language of the statute itself. *Id.* Where the statutory language is plain and unambiguous and conveys a clear and definite meaning, we apply it as written without interpreting or construing it. *Id.*

{¶10} R.C. 2943.031(A) provides, in relevant part:

(A) Except as provided in division (B) of this section, prior to accepting a plea of guilty or a plea of no contest to an indictment, information, or complaint charging a felony or a misdemeanor other than a minor misdemeanor if the defendant previously has not been convicted of or pleaded guilty to a minor misdemeanor, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement.

"If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation,

4

exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

**{¶11}** The statutory language is plain and unambiguous. The statute applies to criminal proceedings involving defendants who enter pleas of guilty or no contest. We first note that juvenile proceedings are not criminal proceedings for immigration purposes. *See Uritsky v. Gonzales*, 399 F.3d 728, 735 (6th Cir.2005) (explaining that in enacting 8 U.S.C. 1101(a)(48)(A), which defined the term "conviction" for the Immigration and Naturalization Act, Congress did not intend to include juvenile delinquency findings as convictions). Additionally, the statute refers to "defendant," "guilty plea," and "conviction," but does not include the terms "juvenile," "adjudication," or "admission."

**{¶12}** Had the legislature intended the statute to apply to juvenile proceedings, it would have included juvenile adjudications. *See, e.g.*, R.C. 2950.01(B)(1) defining "sex offender" as "a person who is convicted of, pleads guilty to, has been convicted of, has pleaded guilty to, is adjudicated a delinquent child for committing, or has been adjudicated a delinquent child for committing a sexually oriented offense;" R.C. 2929.13(A)(2) prohibiting persons from possessing firearms when "[t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." Because the statute does not apply to juvenile proceedings, we find P.R.'s first argument lacks merit.

*The Admissions were Entered Knowingly*

**{¶13}** Next, P.R. contends that the court erred by not allowing him to withdraw his admissions pursuant to Juv.R. 29(D). Specifically, he alleges that the

magistrate did not inform him that his admissions "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization" prior to accepting his admissions. *See* R.C. 2943.031(A). Due to this omission, P.R. claims his admissions were not entered knowingly because the immigration consequences would have been critical to his decision to enter the admissions.

{¶14} However, P.R. has not established that his adjudications have any deportation, admissibility, or naturalization consequences. Instead, he argued that the adjudications could subject him to deportation and affect his eligibility for numerous immigration benefits, including DACA.

{¶15} We must note that the record does not establish what P.R.'s immigration status is in the United States. P.R. did not testify at the hearing or submit an affidavit. The only affidavit in the record is that of his mother, which is void of any discussion regarding P.R.'s immigration status. Nonetheless, the issues before us are premised on the lack of immigration status. *See United States v. Lopez*, 929 F.3d 783, 786 (6th Cir.2019) (discussing that to be eligible for DACA an applicant must have no lawful status on June 15, 2012).

{¶16} DACA was enacted in 2012 when Secretary Janet Napolitano of the Department of Homeland Security ("DHS") announced in a memorandum that DHS would exercise its "prosecutorial discretion" as to certain aliens who were brought to this country as children. *Id.*, citing Memorandum from Secretary Janet Napolitano, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children 1, p. 3 (June 15, 2012). However, DACA does not confer any substantive rights, immigration status, or a pathway to citizenship; only

Congress can confer these rights through its legislative authority. *See id.*

{¶17} Secretary Napolitano discussed criteria which should be satisfied before individuals can be considered for an "exercise of prosecutorial discretion" which, in effect, could result in DHS choosing not to seek their removal. *Id.* And the Memorandum was released on June 15, 2012, long after P.R.'s adjudications. *See Lopez* at 786.

{¶18} After reviewing the record, we agree with the trial court's determination that the magistrate informed the juvenile of all of the dispositional options and consequences of his admissions and determined that the juvenile understood all the dispositional options and consequences prior to accepting the admissions. We are not persuaded by his second argument.

*P.R.'s Counsel was not Ineffective*

{¶19} P.R. requests that the motion to vacate be remanded to the juvenile court to determine whether his counsel was ineffective for failing to advise him of the immigration consequences of the admissions. P.R. did not raise this issue in his motions to withdraw his admissions. It is well settled that issues not raised in the trial court may not be raised for the first time on appeal. *State v. Comen*, 50 Ohio St.3d 206, 211, 533 N.E.2d 640 (1990).

{¶20} Even if he had raised this issue in the juvenile court, as previously discussed, P.R. has not established that his adjudications have had any adverse immigration consequences. Without any adverse consequences, there is no advice for counsel to provide.

{¶21} Accordingly, we overrule his first assignment of error.

*The Declassification Motion was Properly Overruled*

{¶22} In his second assignment of error, P.R. argues that the juvenile court abused its discretion by overruling his petition for declassification because the evidence was sufficient to support declassification.

{¶23} The juvenile court has discretion in determining a juvenile's tier classification. *See In re Antwon C.*, 182 Ohio App.3d 237, 2009-Ohio-2567, 912 N.E.2d 182, ¶ 17 (1st Dist.). We review a classification for an abuse of discretion. *See In re T.M.*, 12th Dist. Fayette No. CA2015-07-017, 2016-Ohio-162, ¶ 27.

{¶24} In determining whether a juvenile's sex-offender classification should be continued, the juvenile court must review the prior classification, and all relevant factors and information, including the factors in R.C. 2152.83(D). R.C. 2152.85(C). The R.C. 2152.83(D) factors include the nature of the sexually-oriented offense; whether the child has shown any genuine remorse or compunction for the offense; the public interest and safety; the factors set forth in R.C. 2950.11(K); the factors set forth in R.C. 2929.12(B) and (C) as they apply to the delinquent child, the offense, and the victim; and the results of any treatment provided to the child and of any follow-up professional assessment of the child.

{¶25} The R.C. 2950.11(K) factors include the age of the delinquent child, the child's prior record, the age of the victim, the number of victims, whether alcohol or drugs were used in the commission of the offense, any prior dispositional order or treatment, any mental illness or disability of the child, the nature of the offense, whether the offender displayed cruelty, and any other "behavioral characteristics" that contributed to the delinquent child's conduct. The R.C. 2929.12(B) and (C) factors relevant to P.R. include whether the offender's relationship with the victim

8

facilitated the offense and whether the offender expected to cause physical harm.

{¶26} The court considered all relevant factors including P.R.'s success in treatment and on probation, Dr. Barzman's expert testimony and his report that concluded P.R. was at a low risk to reoffend. The court was concerned with P.R.'s stability and the expert's admission that his report did not include P.R.'s recent divorce in his assessment of P.R.'s stability or reoffense risk. The court was further concerned with the facts of the sex offenses, including the young age of the victim.

{¶27} After thoroughly reviewing the record, we cannot say that the juvenile court's decision to continue P.R.'s Tier II sex-offender classification was arbitrary, unreasonable, or unconscionable, and we overrule his second assignment of error.

*Conclusion*

{¶28} Having considered and overruled all of P.R.'s assignments of error, we affirm the judgments of the trial court.

Judgments affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.