[Cite as *In re J.C.*, 2023-Ohio-1501.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: J.C. | : | APPEAL NO. C-220293 |
| | | TRIAL NO. 21-660Z |
| | : | |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 5, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller,* Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant J.C.

**Bоск, Judge.**

{¶1}   Defendant-appellant J.C. challenges the juvenile court's decision to classify him as a Tier II sex offender. For the following reasons, we affirm.

## I.   Facts and Procedure

{¶2}   Over the course of one year, 14-year-old J.C. subjected his 8-year-old cousin to a series of sexual acts, including rape. In 2021, the state filed a complaint in the juvenile court charging J.C. as a delinquent child under R.C. 2152.02 for rape in violation of R.C. 2907.02. According to the complaint, J.C. allegedly locked the door during the encounters and threatened his victim. The complaint was one of 18 filed in the juvenile court, part of a broader prosecution of J.C. for sex offenses committed against three younger cousins when J.C. was 13 to 14 years old. Eventually, the state dismissed 15 counts of rape and one count of gross sexual imposition in exchange for J.C.'s admission to three complaints charging him with rape. The juvenile court accepted J.C.'s admissions and adjudicated him delinquent. Because J.C. was 14 years old at the time of the offense in this case, the juvenile court had discretion to classify him as a sex offender and select his sex-offender tier. *See* R.C. 2152.83(B).

{¶3}   At the juvenile-offender-registration hearings, the state requested that J.C. be classified as a juvenile sex offender. In support, the state relied on testimony from J.C.'s probation officer and Dr. Nicole Leisgang, as well as Dr. Leisgang's expert report and statements from the victims' families. J.C. opposed the state's request, relying on testimony of J.C.'s experts, Dr. Purcell Taylor, a National Youth Advocate Program clinician, therapist Michelle Fischer, and Talbert House psychologist Dr. Maitee Soto. Additionally, J.C. submitted into the evidence Dr. Taylor's expert report, an outpatient services progress report, and statements from J.C. and his family.

**{¶4}** The magistrate determined that J.C. be classified as a juvenile offender registrant and a Tier II sex offender. J.C. objected to that classification. The juvenile court accepted the magistrate's findings, adopted the magistrate's decision, and ordered J.C. to register as a Tier II sex offender. The juvenile court based its decision on the testimony of Dr. Leisgang, Dr. Taylor, and Dr. Soto, as well as the expert reports. The juvenile court considered the nonexhaustive list of statutory factors in R.C. 2152.83(D) and specifically found that J.C. failed to demonstrate genuine remorse or compunction for the offenses and that the expert testimony indicated that he was a public safety threat. *See* R.C. 2152.83(D)(2)-(3). In addition, the juvenile court found that although J.C. was participating in and cooperating with court-ordered treatment, there was evidence that J.C. would require a longer-than-usual course of treatment. *See* R.C. 2152.83(D)(6).

**{¶5}** The juvenile court also considered, as it must, the nonexhaustive list of statutory factors in R.C. 2950.11(K). *See* R.C. 2152.83(D)(4). Relevant here, the juvenile court found that classifying J.C. was supported by the fact that J.C. was adjudicated delinquent for rape in three cases for offenses that occurred over the course of one year against the eight-year-old victim in this case, and the eight- and six-year-old victims in J.C.'s other cases. *See* R.C. 2950.11(K)(2)-(4), (6), and (8). The juvenile court acknowledged that J.C. experienced sexual abuse as a child and that he was diagnosed with depression and an unspecified trauma disorder. *See* R.C. 2950.11(K)(7). Further, the juvenile court expressed concern over J.C.'s inability or difficulty with acknowledging the behaviors underlying and preceding his conduct. *See* R.C. 2950.11(K)(10).

**{¶6}** Finally, the juvenile court addressed R.C. 2929.12(B)'s and (C)'s list of aggravating and mitigating factors, as required by R.C. 2952.83(D)(5). The juvenile court found J.C.'s conduct severe because J.C.'s relationship with the victim facilitated the rape, which inflicted serious mental injuries on the victim, exacerbated by the victim's young age. *See* R.C. 2929.12(B)(1)-(2) and (6). And the juvenile court found no substantial grounds to mitigate J.C.'s conduct. *See* R.C. 2929.12(C). J.C. appeals his Tier II sex-offender classification.

## II.    Law and Analysis

**{¶7}** In a single assignment of error, J.C. argues that the juvenile court abused its discretion when it classified him as a Tier II sex offender. J.C. does not dispute that the juvenile court considered the statutory factors prescribed by R.C. 2152.83(D), 2950.11, and 2929.12(C)-(B). Rather, J.C. disputes the juvenile court's factual findings and analysis of those facts under the relevant statutory factors.

<u>Juvenile Courts Exercise Broad Discretion When Classifying Juvenile Offenders</u>

**{¶8}** The juvenile court is vested with broad discretion over whether to classify a child as a sex offender for eligible offenses committed when the child was 14 years old. *In re R.B.*, 2021-Ohio-2112, 174 N.E.3d 480, ¶ 46 (1st Dist.). Further, our review of a child's sex-offender classification is "highly deferential." *Id.* We review a juvenile court's classification for an abuse of discretion. *In re P.R.,* 1st Dist. Hamilton Nos. C-180166 and C-180167, 2019-Ohio-4751, ¶ 23. An abuse of discretion exists when a court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶9}** In Ohio, a child adjudicated delinquent for certain crimes may, through an exercise of the juvenile court's discretionary authority, be classified as a sex offender. *See* R.C. 2152.83. The statutory scheme is designed to " 'reintegrat[e]

4

juveniles back into society' by emphasizing 'individual assessment, the best interest of the child, treatment, and rehabilitation.' " *In re K.B.,* 1st Dist. Hamilton No. C-170542, 2018-Ohio-4810, ¶ 4, quoting *In re C.A.,* 2d Dist. Montgomery No. 23022, 2009-Ohio-3303, ¶ 62, and *State v. Hanning*, 89 Ohio St.3d 86, 88, 728 N.E.2d 1059 (2000). Before exercising its discretion to classify a child as a sex offender, the juvenile court must consider a tapestry of enumerated factors in several statutes. The offense " 'is only one of many pieces of relevant information the juvenile court may consider, and the level of the offense is not determinative of the level of classification.' " *In re K.B.,* at ¶ 4, quoting *In re N.Z.*, 11th Dist. Lake No. 2012-L-100, 2014-Ohio-157, ¶ 17.

{¶10}   R.C. 2152.83(D) requires the court to consider, among other things, 1.) the nature of the offense, 2.) the child's remorse or compunction, 3.) public interest and safety issues, 4.) the statutory factors set forth in R.C. 2950.11(K) and 2929.12(B)-(C), and 5.) the results of any treatment or assessments. *See* R.C. 2152.83(D)(1)-(6). In addition, the following R.C. 2950.11(K) factors were relevant to the juvenile court's classification decision: 1.) the offender's age, 2.) the victim's age, 3.) the number of victims, 4.) the offender's mental health, and 5.) the nature of the sexual conduct in question. *See* R.C. 2950.11(K)(1)-(4), (7)-(8). Finally, R.C. 2929.12(B) instructs the court to consider nine nonexhaustive factors suggesting the conduct at issue was more serious than the typical offense. Here, the court discussed 1.) the severity of the harm, 2.) whether the harm was exacerbated by the victim's age, and 3.) whether the offender's relationship with the victim facilitated the offense when it determined if the conduct was more severe than conduct normally constituting the offense. *See* R.C. 2929.12(B)(1), (2), and (6). In contrast, R.C. 2929.12(C) identifies four nonexhaustive factors that suggest the offender's conduct is less serious than the typical offense.

The Trial Court Did Not Abuse Its Discretion

{¶11} J.C. challenges the juvenile court's findings and analysis of several R.C. 2152.83(D) factors. First, he argues that the trial court improperly considered the underlying facts of two other delinquency adjudications in its analysis of the nature of the offense, which occurred before J.C. turned 14 years old. But the statute instructs the juvenile court to "consider all relevant factors, including, but not limited to * * * [t]he nature of the sexually oriented offense." R.C. 2152.83(D). J.C. has not explained how these adjudications are not relevant to the juvenile court's classification decision for the delinquency adjudication in this case. Nor has he provided any caselaw to support his argument.

{¶12} Next, he contends that the evidence demonstrates his genuine remorse and compunction under R.C. 2152.83(D)(2). While the juvenile court found that J.C. had not shown genuine remorse or compunction for the offense, it acknowledged that J.C. accepted some responsibility for his actions. Moving to the public interest and safety considerations under R.C. 2152.83(D)(3), the juvenile court found that J.C. posed a threat to public interest and safety. In response, J.C. emphasizes testimony from several of his witnesses to argue that J.C. is unlikely to reoffend and that he poses a minimal threat to the public. He contends that the results of his treatment contradict the juvenile court's classification decision. *See* R.C. 2152.83(D)(6).

{¶13} But the juvenile court considered the relevant statutory factors and made findings supported by the evidence in the record, including J.C.'s witnesses and expert report. Dr. Taylor noted that J.C. posed a "low to moderate range for future sexually acting out behavior" and failed to recognize the behaviors that preceded his deviant sexual behaviors. While Fischer highlighted J.C.'s progress, she noted that he would benefit from more treatment. Likewise, Dr. Soto testified that J.C. benefitted

6

from outpatient services but cautioned that his treatment would take longer than other cases. She testified that J.C. accepted responsibility for his actions, but needed to work on understanding both the damage inflicted on his victims and the circumstances that triggered his behaviors to prevent future incidents.

{¶14} While J.C. appears to agree with the juvenile court's findings under R.C. 2950.11(K), he challenges the juvenile court's findings under R.C. 2929.12(B) and (C). But the juvenile court's findings under the relevant R.C. 2929.12(B) factors are similarly supported by the record. While J.C. argues that there was no evidence indicating that the victim's harm was exceptionally serious, statements made to the magistrate by the victim's parents indicated that the victim is living with "serious consequences" and needed treatment and therapy. And despite J.C.'s contention that the juvenile court's finding that his relationship with the victim facilitated the offense lacks evidentiary support, J.C.'s actions and remarks to Dr. Leisgang suggest that he leveraged familial trust to conceal the acts and coerce the victims in all three cases.

{¶15} Finally, J.C. challenges the efficacy and wisdom of juvenile-sex-offender classifications. He emphasizes research and studies that question the efficacy of placing children on sex-offender registries and suggest that sex-offender registries impede the treatment of children adjudicated delinquent for sex offenses.

{¶16} We recognize that "juveniles are less culpable than adults [and] their bad acts are less likely to reveal an unredeemable corruptness." *In re C.P.,* 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 40. But this court does not set policy— that is the role of the legislature. We must follow the law enacted by that body. As such, we are constrained to review the juvenile court's classification decision for an abuse of discretion, which commands a degree of decisional latitude. While we scrutinize the juvenile court's exercise of discretion, we are prohibited from substituting our own

7

judgment for that of the juvenile court. *See Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶17} Because the juvenile court's conclusions are supported by the evidence in the record, we cannot conclude that J.C.'s Tier II sex-offender classification was unreasonable, arbitrary, or unconscionable. And so we hold that the juvenile court did not abuse its discretion when it classified J.C. as a Tier II sex offender.

## III. Conclusion

{¶18} We overrule J.C.'s single assignment of error and affirm his Tier II sex-offender classification.

Judgment affirmed.

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.