[Cite as *In re A.B.*, 2026-Ohio-2170.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.B. | : | APPEAL NO. C-250575 |
| | | TRIAL NO. 19/4452 X |
| | : | |
| | : | *JUDGMENT ENTRY* |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/10/2026 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *In re A.B.*, 2026-Ohio-2170.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: A.B. | : | APPEAL NO. | C-250575 |
| | | TRIAL NO. | 19/4452 X |
| | : | | |
| | : | | |
| | | *O P I N I O N* | |
| | : | | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 10, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Jessica Moss* and *Margaret Kane*, Assistant Public Defenders, for Defendant-Appellant.

**Bock, Judge.**

{¶1} In this appeal, appellant A.B. challenges the juvenile court's decision to reclassify him as a Tier I juvenile-sex-offender registrant rather than declassifying him altogether. In a single assignment of error, he maintains that the juvenile court abused its discretion because it failed to consider the relevant statutory factors and ignored evidence of his rehabilitation and low risk of reoffending.

{¶2} But the juvenile court complied with the statutory mandate to consider the relevant statutory factors before it reclassified A.B., as it discussed facts bearing on those factors and cited its consideration of the relevant statutory factors in its reclassification order. Moreover, the juvenile court did not abuse its discretion when it reclassified A.B. because the record supports the juvenile court's findings and statutory factors weigh in favor of reclassification rather than declassification.

{¶3} We overrule A.B.'s assignment of error and affirm the juvenile court's judgment.

## I. Factual and Procedural History

{¶4} In September 2019, the State alleged that then-15-year-old A.B. was delinquent for acts that would constitute forcible rape of his half-sister in violation of R.C. 2907.02 if committed by an adult. Later, the State reduced the rape charge to sexual battery in violation of R.C. 2907.03, a third-degree felony if committed by an adult, in exchange for A.B.'s admission to the complaint. In the agreement, A.B. agreed to a Tier II juvenile-sex-offender-registrant classification.

### A. *A.B.'s adjudication, disposition, and juvenile-sex-offender classification*

{¶5} At his adjudication hearing, A.B. admitted that, while visiting his father's residence, he implicitly threatened his half-sister into having sexual intercourse over her objections. At the end of the adjudication hearing, the magistrate

accepted A.B.'s plea and adjudicated him delinquent for the sexual-battery offense. Relevant here, the magistrate's entry classified A.B. as a Tier II juvenile-sex-offender registrant. The juvenile court approved and adopted the magistrate's entry.

{¶6} At a May 2021 disposition hearing, the victim-impact statement and statement from the victim's aunt revealed the severity of psychological harm caused by A.B.'s actions. The presentence report detailed significant traumas that marked A.B.'s childhood. During his statement to the juvenile court, A.B. admitted that he "violently victimized" the victim and expressed remorse for the pain and suffering that his actions caused her. A.B. made clear that he wanted to be accountable for his actions, even when the magistrate and victim's mother pointed out that A.B., himself, was a victim of child sexual assault.

{¶7} Before the disposition hearing, A.B. had begun mental-and-behavioral-health treatment at Abraxas, a residential treatment facility. A probation officer informed the magistrate that A.B. was "doing well" at Abraxas. At the end of the hearing, the magistrate placed A.B. on probation, restated his juvenile-sex-offender-registrant classification, and ordered A.B. to complete his treatment at Abraxas. The magistrate explained that, once he had completed treatment, A.B. would have to file "for the end of disposition." The juvenile court "approved and adopted" the magistrate's dispositional entry, which required him to successfully complete treatment at Abraxis and any aftercare treatment recommended.

*B.  End-of-disposition proceedings*

{¶8} In a December 2021 entry, the magistrate found that A.B. was eligible to have his juvenile-sex-offender-registrant status reevaluated. At a hearing, the evidence showed that A.B. had completed his treatment at Abraxas and was in "semi-independent living" at Lighthouse Youth Services ("Lighthouse"). But the magistrate

continued the reclassification hearing after learning that A.B. had never received notice of his duties to register as a Tier II juvenile-sex-offender registrant. The hearing resumed weeks later and A.B. asked to continue the matter until he was "out in the community and . . . able to demonstrate to the Court" that declassification was proper.

*C. A.B.'s declassification request and hearing*

**{¶9}** More than four years later, in June 2025, A.B. moved for an end-of-disposition hearing and declassification. The bulk of A.B.'s evidence in support of declassification were his clinical assessments and treatment evaluations.

**{¶10}** At the hearing, a probation department employee informed the juvenile court that A.B. had "successfully complete[d] the sex offense specific [treatment] program at Abraxas" and was transferred to "independent living." A Hamilton County Job and Family Services employee who supervised A.B. had "no specific concerns that she needed to report." Counsel for A.B. explained that, in addition to successfully completing treatment, A.B. graduated from high school and continued to work with "Light House and the Action Board."

**{¶11}** A.B.'s initial risk assessments had chronicled A.B.'s exposure to multiple traumatic childhood events as part of a pattern of abuse and neglect experienced by A.B. One evaluator found that while "emotional disorders [] underlie his sexually inappropriate behaviors," the Juvenile Sex Offender Assessment Protocol ("J-SOAP") revealed that A.B.'s "risk of future sexually acting out behavior is believed to be considered in the low range." By contrast, another evaluator found that the J-SOAP risk factors showed an "increased risk of future offending."

**{¶12}** Abraxas recommended treatment for sexual decision making and psychiatric services for A.B.'s trauma and his attention-deficit hyperactivity disorder.

A.B.'s treatment records from Abraxas reveal weekly behavioral-health counseling, group therapy, and medication as part of A.B.'s treatment plan.

{¶13} Abraxas reassessed A.B. every six months. In April 2021, the Abraxas evaluator expressed concern about A.B.'s responses to questions about his sexual history and negative self-concept. While A.B. had recognized that his actions were wrong and problematic, he cited being "[d]runk and high" to explain his actions. Six months later, the evaluator was concerned with A.B.'s propensity for avoidance, which hindered his ability to process his past traumas and depression. But later, A.B. stopped "minimiz[ing] his offense" and no longer blamed the sexual assault on his intoxication.

{¶14} When A.B. was discharged in December 2021, Abraxas observed that A.B. had routinely attended treatment sessions, "was consistent in participation of both individual and group sessions," and "successfully completed" treatment, although he struggled, at times, to participate in treatment and to consider others' perspective. His evaluator recommended "ongoing cognitive-behavioral therapy to identify causes of his mood issues and ways that he can challenge thoughts and feelings driving this behavior." His discharge plan anticipated "outpatient therapy, case management, and psychiatric services provided by Lighthouse[.]"

{¶15} In January 2022, Lighthouse developed a comprehensive treatment plan for A.B. A.B. identified several goals for his treatment, including acknowledging and taking responsibility for inappropriate behavior through therapy. He informed Lighthouse employees that he had stopped taking, and "threw out," his medication after he was placed in Lighthouse. By April 2025, Lighthouse's treatment plan identified A.B. as having a "low" risk of harm, a "mild" functional impairment, "significant resiliency," and "optimal" treatment acceptance and engagement. A.B. completed inpatient treatment and understood the basic tenants of his plan.

{¶16}  At the time of his end-of-disposition hearing, A.B. had graduated from high school and completed a trade program with Easter Seals. In addition, he was an active participant on the Lighthouse Youth Action Board.

D. *The State opposed reclassification and declassification*

{¶17}  The State opposed any decrease in A.B.'s sex-offender classification and asked the juvenile court to continue A.B.'s Tier II classification. The State cited the original rape offense to justify that request, an argument that overlooked the State's decision to reduce that offense to sexual battery.

{¶18}  The victim's letter was read to the juvenile court. She opposed A.B.'s declassification and removal from the registry, describing his potential removal as unfair because A.B. "can just wipe it all away as if it didn't happen" while she had to live with the effects of his actions. The victim expressed concern that other women would "ha[ve] to deal with [A.B.]" if he were able to hide his offense.[1]

{¶19}  Before the close of the hearing, A.B. apologized "for the very harmful and impulsive decisions I made six years ago that ultimately destroyed the bond between me and my sister." He insisted that he has been "trying to better [him]self, to make sure it doesn't happen again."

{¶20}  The juvenile court ordered A.B.'s Tier II juvenile-sex-offender status to be reclassified to a Tier I status. A.B. appeals the judgment.

## II. Analysis

{¶21}  On appeal, A.B. argues that the juvenile court abused its discretion when it denied his request for declassification and reclassified him as a Tier I juvenile-

---

[1] The juvenile court assuaged the victim's concerns and explained that A.B. was not a public-registry-qualified juvenile offender and declassification did not mean that the delinquency would be "off the record or wiped away."

sex-offender registrant. He maintains that the juvenile court's cursory analysis suggests that the juvenile court did not consider the relevant statutory factors.

A. *Juvenile sex-offender classifications, reclassification, and declassification*

**{¶22}** For Ohio children adjudicated delinquent, dispositions are meant to provide the child with care, protection, development, and rehabilitation, while also holding the child accountable and restoring the victim. *See* R.C. 2152.01(A). A juvenile court fashioning a dispositional order "must evaluate the particular facts and circumstances of each case and discern the particular problems and needs of the juvenile appearing before them." *In re D.R.,* 2022-Ohio-4493, ¶ 15.

**{¶23}** A child's juvenile-sex-offender-registrant classification is part of the child's disposition. *See* R.C. 2152.86. At the disposition stage, the child-classification statutes "give the juvenile court discretion to determine in what tier the juvenile should be classified [to] further the "'goal of reintegrating juveniles back into society'" by emphasizing 'individual assessment, the best interest of the child, treatment, and rehabilitation.'" *In re K.B.,* 2018-Ohio-4810, ¶ 4 (1st Dist.), quoting *In re C.A.,* 2009-Ohio-3303, ¶ 62 (2d Dist.), quoting *State v. Hanning,* 2000-Ohio-436, ¶ 14.

**{¶24}** But a child's juvenile-sex-offender-registrant classification "'is subject to modification or termination'" by the juvenile court at the end of the child's disposition. *See In re R.B.,* 2020-Ohio-5476, ¶ 9, quoting R.C. 2152.83(E). At an end-of-disposition hearing, the focus is "the effectiveness of the disposition and of any treatment." R.C. 2152.84(A)(1). As an exercise of its broad authority, the juvenile court may continue, reclassify, or declassify a child after conducting an "individualized risk assessment of the juvenile's potential to reoffend and []determin[ing] [] the effectiveness of the juvenile's treatment." *In re D.R.,* 2022-Ohio-4493, ¶ 28. In this regard, "the discretion employed by a juvenile court at the initial classification hearing

serves a purpose different from the discretion employed at the completion-of-disposition hearing." *Id.*

**{¶25}** We review the juvenile court's decision to continue, modify, or end a child's classification for an abuse of discretion. *See In re P.R.,* 2019-Ohio-4751, ¶ 23 (1st Dist.); *see also* R.C. 2152.84(A)(2). A juvenile court abuses its discretion if its decision is unreasonable, arbitrary, or unconscionable. *In re J.C.,* 2023-Ohio-1501, ¶ 8 (1st Dist.). An unreasonable decision is a decision that lacks a """sound reasoning process.""" *State v. T.S.,* 2024-Ohio-4898, ¶ 81 (8th Dist.), quoting *State v. Ford*, 2019-Ohio-4539, ¶ 106, quoting *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). And arbitrary decisions are "'made "without consideration of or regard for facts [or] circumstances.""" *Id.*, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* (10th Ed. 2014).

B. *Juvenile courts must consider relevant statutory factors*

**{¶26}** When deciding whether to continue, reclassify, or declassify a child, the juvenile court must "'consider all relevant factors, including but not limited to'" the catalogue of 28 statutory factors under R.C. 2152.83(D), 2950.11(K), and 2929.12(B)-(C) to guide its end-of-disposition decision. When a statute instructs a court to consider certain statutory factors, the court must """reflect on [and] think about [those factors] with a degree of care or caution""" before reaching its decision. *In re A.M.*, 2020-Ohio-5102, ¶ 25, quoting *State v. Thompson*, 2001-Ohio-1288, fn. 1 (2001), quoting *Webster's Third New International Dictionary* (1986).

**{¶27}** Beginning with R.C. 2152.83(D), the juvenile court must consider "(1) the nature of the offense, (2) whether the offender has shown remorse, (3) the public interest and safety, [and] (4) the results of any treatment and follow-up professional assessments." *In re R.B.*, 2021-Ohio-2112, ¶ 41 (1st Dist.).

9

{¶28}  Turning to R.C. 2950.11(K), the juvenile court must consider: the offender's age, the offender's prior criminal or juvenile record regarding all offenses including sex offenses, the victim's age, whether there were multiple victims, any usage of alcohol or drugs, whether any prior offense was a sex offense and whether the offender received treatment, whether the offender served a sentence or dispositional order for the prior offense, any mental illness or disability of the offender, the nature of the sexual conduct and any pattern of abuse, whether the offense involved cruelty or the threat of cruelty, and any additional behavioral characteristics contributing to the offender's conduct.

*Id.* at ¶ 42.

{¶29}  And R.C. 2929.12(B) and (C) require the juvenile court to consider "the victim's physical or mental injury, whether the victim suffered serious harm, whether the offender's relationship with the victim facilitated the offense, whether the victim induced or facilitated the offense, whether the offender was acting under strong provocation, whether the offender expected to cause physical harm, and whether there are substantial grounds to mitigate the offender's conduct." *Id.*

C. *The record demonstrates that the juvenile court considered the relevant factors*

{¶30}  When the trial court announced its reclassification decision, it recognized A.B.'s compliance with its dispositional orders and that he "managed to conduct himself in a way that does not continue any behaviors that were associated with this original offense." But it also afforded weight to the lingering "effect of the offense" on the victim and explained that A.B.'s "Tier I classification will be a reminder . . . to continue his rehabilitation . . . likely the rest of his life." The juvenile court's end-

10

of-disposition order cited its "consideration of all relevant factors" as the basis for its reclassification decision.

{¶31} A.B. recognizes that R.C. 2152.83(D)'s, 2950.11(K)'s, and 2929.12(B)-(C)'s mandate that certain statutory factors must be considered by the juvenile court "does not constitute a requirement that a court explicitly address those factors or that it make specific factual findings." *See In re A.M.*, 2020-Ohio-5102, at ¶ 26. Indeed, Ohio courts have held that, while R.C. 2152.83(D) "requires the juvenile court to *consider* the outlined factors, nothing in the statute requires the juvenile court to 'explicitly announce its findings regarding each individual factor before it classifies a child as a juvenile offender registrant.'" (Emphasis in *In re C.R.*) *In re K.T.*, 2019-Ohio-4258, ¶ 25 (8th Dist.), quoting *In re C.R.*, 2014-Ohio-1936, ¶ 6 (4th Dist.); *see In re T. C.,* 2025-Ohio-4730, ¶ 26 (6th Dist.) ("because the trial court was required to consider the relevant factors under R.C. 2152.83 (D), but not required to specify in its opinion a response to each of the factors, the trial court's omission of enumerated reasons did not constitute an abuse of discretion.").

{¶32} Yet, A.B. argues that the juvenile court neglected to "engage in a thorough discussion of the relevant statutory factors or the weight it afforded those factors" before arriving at its reclassification decision. We presume that a lower court considered all relevant statutory factors "absent an affirmative demonstration to the contrary." *State v. Ingels,* 2020-4367, ¶ 28 (1st Dist.) (presumption applied to the factors listed in R.C. 2929.11 and 2929.12); *see In re R.M.*, 2014-Ohio-1200, ¶ 28 (1st Dist.) (presumption applied to the factors listed in R.C. 2950.11(F)(2)).

{¶33} In support, A.B. relies on cases where a lower court's silence regarding the relevant statutory factors warranted a reversal of the lower court's decision and a remand of the case. *See In re M.W.*, 2019-Ohio-4564, ¶ 58 (5th Dist.) ("the record does

11

not contain a sufficient rationale to permit us to perform meaningful appellate review of the classification under an abuse-of-discretion standard."); *see also State v. Burks*, 2026-Ohio-259, ¶ 23 (8th Dist.) ("There was no discussion about its decision nor did the court mention either the relevant facts, evidence, or statutory factors it considered in reaching its decision.").

{¶34} But unlike the courts in *In re M.W.* and *Burks,* the juvenile court here cited its consideration of the "relevant factors" in its order. And it emphasized A.B.'s compliance, the harm to the victim, and A.B.'s need for continued rehabilitation when it announced his reclassification at the hearing. A.B.'s compliance with the dispositional order and need for A.B.'s continued rehabilitation speak to public interest and safety under R.C. 2152.83(D)(2), the results of his treatment and follow-up professional assessments under R.C. 2152.83(D)(5), his participation in available programs for sex offenders under R.C. 2950.11(K)(6), his "mental illness" under R.C. 2950.11(K)(7), and his behavioral characteristics that "contribute[d] to [his] conduct" under R.C. 2950.11(K)(10). The juvenile court's reference to the lingering harm to the victim speaks to the nature of the offense under R.C. 2952.83(D)(1) and 2950.11(K)(8), as well as the victim's "serious . . . psychological harm" caused by the offense under R.C. 2929.12(B)(2). So, the record reflects the juvenile court's consideration of relevant factors that bear on its reclassification decision.

{¶35} It would be better practice for a juvenile court to explain how the relevant statutory factors influenced its classification decision. From a policy perspective, the parties, including the victim, deserve to understand why the delinquent child was reclassified rather than declassified. Plus, a more detailed discussion "aids appellate review and ensures that the offender receives a fair and complete hearing." *See In re A.M.* 2020-Ohio-5102, at ¶ 32. But because R.C.

2152.83(D), 2950.11(K), and 2929.12(B)-(C) do not require a more detailed discussion, the juvenile court satisfied the statute's mandate to consider the relevant statutory factors before arriving at its reclassification decision.

*D. The trial court did not abuse its discretion when it reclassified A.B.*

{¶36} Next, A.B. argues that the trial court abused its discretion because its decision reflects a flawed reasoning process, citing the juvenile court's allegedly contradictory findings involving A.B.'s need for continued rehabilitation and his completion of treatment at Abraxas and Lighthouse. A.B. points out that his Abraxas and Lighthouse records demonstrate his growth and completion of court-mandated treatment, which he construes as proof that the disposition and treatment were effective under R.C. 2152.84(A)(1).

{¶37} He also maintains that his evidence demonstrates his low risk of reoffending. *See* R.C. 2152.84(A)(1). A.B. included research on low recidivism rates for child sex offenders and the efficacy, or lack thereof, of child-sex-offender registrations in support of declassification. *See* Michael Caldwell, *Quantifying the Decline in Juvenile Sexual Recidivism Rates*, 22 Psych.Pub.Pol'y & L. 414 (2016); Michael Caldwell & Brendan Caldwell, *The Age of Redemption for Adolescents Who Were Adjudicated for Sexual Misconduct*, 28 Psych.Pub.Pol'y & L. 167 (2022); Letourneau, Harris, Shields, Ruzicka, Buckman, Kahn, Nair, & Walfield, *Effects of Juvenile Sex Offender Registration on Adolescent Well-Being*, 14 Psych.Pub.Pol'y & L. 105 (2018). In this regard, it is well established that children are "less culpable and more amenable to reform than adult offenders." *In re C.P.*, 2012-Ohio-1446, ¶ 84. Indeed, the "core premise of the juvenile court system [is] that as the juvenile ages, he is more responsible and accountable for his actions." *In re M.I.*, 2017-Ohio-1524, ¶ 5 (1st Dist.).

**{¶38}** And in A.B.'s view, the relevant statutory factors demonstrate that the juvenile court's decision to reclassify rather than declassify him was unreasonable and arbitrary. A.B. is correct that his Abraxas and Lighthouse records reveal significant growth on his part, which bears on public safety and interest, the efficacy of his treatment, his mental health, and his behavioral characteristics. *See* R.C. 2152.83(D)(3), (6); *see also* R.C. 2950.11(K)(6)-(7), (10). Indeed, Lighthouse's treatment evaluation in April 2025 observed that A.B. had a "low" risk of harm, an "optimal" level of acceptance and engagement with treatment, significant resiliency, and a "recovery maintenance and management" level of care. And those records, along with A.B.'s remarks to the juvenile court at the hearing, support A.B.'s argument that he has shown "genuine remorse" for his offense. *See* R.C. 2152.83(D)(2). Plus, he has no other record of delinquency. *See* R.C. 2950.11(K)(2), (6).

**{¶39}** Yet, it was reasonable for the juvenile court to find, based on A.B.'s treatment records and "follow-up professional assessment[s]" at both Abraxas and Lighthouse, a need for further rehabilitation. *See* R.C. 2152.83(D)(6). In its April 2025 review of A.B.'s treatment, Lighthouse discussed A.B.'s "need" for adolescent psychotherapy to address his conduct disorder and impulsive behaviors. While he completed his inpatient treatment, the evaluator found that A.B. had a continued need for support as he transitioned to an unsupported environment. In both April and October 2021, Abraxas evaluators identified A.B.'s tendency to avoid confronting his depression and traumatic experiences that marked his childhood. In April 2025, Lighthouse identified housing and Post Traumatic Stress Disorder ("PTSD") as two of A.B.'s needs at that time. While A.B. had recognized his significant amount of childhood trauma, he was not "doing anything to help with his [PTSD]." Of course, "mental health treatment is often nonlinear, as patients may experience 'good days

and bad days,' depending on their current stressors." *Matos v. Commr. of Social Sec.*, 2019 U.S. Dist. LEXIS 191060, *18 (E.D.N.Y. Oct. 17, 2019), quoting *Drysdale v. Colvin*, 2015 U.S. Dist. LEXIS 78616, *5 (S.D.N.Y. June 16, 2015). But the Lighthouse and Abraxas evaluators' observations are deserving of substantial weight because of the remarkably consistent impressions by A.B.'s evaluators over an extended period.

{¶40} It was reasonable for the juvenile court to construe A.B.'s mental health and continued need for treatment as end-of-disposition factors weighing in favor of reclassification rather than declassification. *See* R.C. 2152.83(D)(6); *see also* R.C. 2950.11(K)(7), (10). Plus, the juvenile court cited psychological harm to the victim at the hearing, which is an end-of-disposition factor under R.C. 2929.12(B)(2). And it was within "the juvenile court's discretion to determine what weight to afford the different factors." *In re J.A.T.*, 2023-Ohio-1854, ¶ 28 (11th Dist.); *see, e.g., In re T.M.*, 2016-Ohio-162, ¶ 27 (12th Dist.) ("Although reports of T.M.'s success within the MVJRC program and Cowan's testimony that T.M. presented a low risk to reoffend were factors weighing in favor of a lesser tier classification, numerous other factors considered by the juvenile court weighed in favor of a higher tier classification.").

{¶41} We hold that the juvenile court did not abuse its discretion when it reclassified A.B. as a Tier I juvenile-sex-offender registrant after the end-of-disposition hearing, rather than declassifying him altogether. We overrule the sole assignment of error.

### III. Conclusion

{¶42} We overrule A.B.'s sole assignment of error and affirm the juvenile court's judgment.

Judgment affirmed.

KINSLEY, P.J., and CROUSE, J., concur.

15